[Civ. No. 7591. Fifth Dist. July 13, 1983.]

In re CORNELIO CARABES on Habeas Corpus.

COUNSEL

Willard L. Weddell, Public Defender, Daniel R. Resnick, Deputy Public Defender, Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Roy M. Dahlberg, Deputy State Public Defender for Petitioner.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall, Linda A. Cabatic and Michael T. Garcia, Deputy Attorneys General, for Respondent.

OPINION

**BROWN (G. A.), P. J.**—■ The issue in this habeas corpus proceeding is whether a defendant who pleads guilty to second degree murder must be advised of the parole consequences of conviction of that offense prior to entering the plea. We hold that such advisement must be given.

Pursuant to a plea bargain, the petitioner pled guilty to second degree murder (Pen. Code, § 187) and use of a firearm in the commission of the

offense (Pen. Code, § 12022.5). He was sentenced to 17 years to life—15 to life for the second degree murder conviction (Pen. Code, § 190) and an additional two-year enhancement for the gun use conviction. Prior to his plea petitioner was given and waived all of his *Boykin-Tahl* rights and was advised the sentence would be 17 years to life for the offense. He was not advised of the parole consequences of his conviction prior to entry of his plea.

Within a few days after the entry of the plea, petitioner moved to withdraw his plea of guilty on the ground he was not advised of the parole consequences of the plea. The motion was denied. The trial court also denied a motion for a certificate of probable cause (Pen. Code, § 1237.5). Petitioner asked this court for a writ of mandate directing the trial court to issue a certificate of probable cause. We deemed the request for mandamus a petition for writ of habeas corpus and issued an order to show cause.

DISCUSSION

In *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605, [119 Cal.Rptr. 302, 531 P.2d 1086], the Supreme Court directed that "[i]n all guilty plea . . . cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, . . ." The requirement extends only to the "'primary and direct consequences' of his 'imminent conviction'" (*People* v. *Searcie* (1974) 37 Cal.App.3d 204, 211 [112 Cal.Rptr. 267], quoting from *In re Birch* (1973) 10 Cal.3d 314, 319-320 [110 Cal.Rptr. 212, 515 P.2d 12]) and is not constitutionally required but is merely a "judicially declared rule of criminal procedure." (*In re Ronald E.* (1977) 19 Cal.3d 315, 320-321 [137 Cal.Rptr. 781, 562 P.2d 684]; *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 516].)

The sentence in this case was imposed pursuant to Penal Code section 1168, subdivision (b), and Penal Code section 190. In addition to setting the term of "15 years to life" for second degree muder, section 190 provides that the defendant is entitled to good time/work time credits against the minimum term of 15 years, "but such person shall not otherwise be released on parole prior to such time." Thus, credits aside, the minimum term is 15 years plus, of course, the 2 years gun use enhancement.

In *In re Jeanice D.* (1980) 28 Cal.3d 210, 215, 216-217 [168 Cal.Rptr. 455, 617 P.2d 1087], the court held that the analogous term of "25 years to life" for first degree murder is an "indeterminate sentence with a minimum possible term of 25 years and a maximum potential term of life imprisonment . . . ." The term actually imposed may range from 25 years to life—in the case at bench from 15 years to life. Thus, petitioner herein will

be eligible for parole after serving 17 years (15 plus 2 for firearm use), less any credits pursuant to Penal Code section 2930 et seq.

Section 3000 of the Penal Code mandates that the sentence include a period of parole to be added to the minimum term. It directs, "A sentence pursuant to Section 1168 or 1170 shall include a period of parole, unless waived, as provided in this section." At the time of the commission of the offense herein, section 3000 established a maximum period of parole for second degree murder of five years. (Pen. Code, § 3000, subd. (b).)[1]

The theory of parole under the former Indeterminate Sentence Law (prior to July 1, 1977) was that parole was part of the sentence and was exactly equal to the term to which a defendant was sentenced. It was an early release from the term to which a defendant was sentenced and thus was a benefit to a defendant.

Under the Determinate Sentencing Act, there is a mandatory period of parole *after* a person has served his term of imprisonment and is released to society. Parole is no longer an element affecting when a prisoner may be released from prison but is rather a condition upon and in addition to imprisonment, affecting his life after he is released.

While a sentence of 15 years to life has been characterized as indeterminate for the purpose of holding that a minor convicted of murder must be first referred to the California Youth Authority for evaluation pursuant to Welfare and Institutions Code section 707.2 (*In re Jeanice D., supra,* 28 Cal.3d 210, 215, 216-217) for parole purposes, a person in the position of petitioner herein is similarly situated to a person sentenced under the Determinate Sentencing Act. Thus, he must be held in prison for a certain minimum period, and then his eligibility for release on parole is at the discretion of the parole authorities.[2] The minimum term is in reality a minimum parole release date.

Since the court was required to impose a period of parole upon petitioner in addition to the minimum term of 15 years plus 2 years for the enhancement, it is a direct and, pragmatically, an inexorable penal consequence of

---

[1]Section 3000.1 was added to the Penal Code by legislation in 1982 (Stats. 1982, ch. 1406, § 3). Subdivision (a) of that section states: "(a) In the case of any inmate sentenced under Section 1168 for any offense of first or second degree murder with a maximum term of life imprisonment, the period of parole, if parole is granted, shall be the remainder of the inmate's life." By the express provisions of the amendment, it is not retroactive. (Stats. 1982, ch. 1406, § 4.) Accordingly, the amendment is inapplicable to the case at bench.

[2]Penal Code section 3040 provides as follows: "The Board of Prison Terms shall have the power to allow prisoners imprisoned in the state prisons pursuant to subdivision (b) of Section 1168 to go upon parole outside the prison walls and enclosures. The board may parole prisoners in the state prisons to camps for paroled prisoners established under section 2792."

the plea that petitioner would be subject to a period of parole commencing sometime after he served his minimum term. The remote possibility that the parole board may permit an early release or waive parole does not detract from the real probability that a term of parole will be served.[3]

Respondent relies upon the case of *People* v. *Flores* (1974) 38 Cal.App.3d 484 [113 Cal.Rptr. 272]. In *Flores,* the defendant moved to withdraw his guilty plea on the ground that he had not been advised that as a resident alien the conviction might result in his deportation. On appeal from the trial court's denial of his motion to withdraw his plea, the Court of Appeal held that since deportation could be instituted only upon the order of the Attorney General of the United States, who retained discretion not to institute such proceedings, the possibility of deportation was a collateral consequence of the conviction. (*Id.,* at p. 488.) The test applied by the court in *Flores* was that if the consequence did not inexorably follow conviction, it was collateral. Applying that test to the instant case, since the trial judge is mandated to impose a period of parole after service of the sentence, the parole automatically follows service of the sentence, but is not inexorable in the strictest sense because the parole board may waive parole. However, the term "inexorable" cannot be interpreted to mean that the consequence must follow in all events and irrespective of how remote the contingency which may obviate it. For example, in *Bunnell,* the Supreme Court held that ". . . in appropriate cases [the defendant shall be advised of] the *possibility* of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302." (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605; italics added.) Obviously, if the occurrence of a future event is only a "possibility," it is not "inexorable."

Further, by way of analogy, the Governor retains the power to commute sentences. (Cal. Const., art. V, § 8.) Accordingly, there is always the remote possibility a sentence will not be fully served. The fact that such an unlikely contingency might occur does not eliminate the necessity of advising defendants of the range of punishment before they plead guilty.

It is argued that since petitioner was sentenced to be imprisoned for his life, any earlier release by way of parole is not an adverse consequence but a benefit to the prisoner. (See *People* v. *Johnson* (1977) 66 Cal.App.3d 197, 200 [135 Cal.Rptr. 756].) However, it is unrealistic to assume petitioner will serve a life term or a substantial part of the life term beyond the minimum term.

Though the purpose of parole is to provide a testing period for reintegration of the prisoner into society, the consequences of being on parole are

---

[3]The current directives of the Board of Prison Terms make persons convicted of murder ineligible to have their parole periods waived.

penal. A parolee is, in a real sense, an "outside inmate." Parole entails a significant array of impositions and liberty curtailment, such as warrantless search and seizure and severe restrictions on travel and other conduct affecting practically every aspect of the parolee's life. Further, "prisoners on parole remain under legal custody and are subject to be returned to prison at any time." (*In re Tucker* (1971) 5 Cal.3d 171, 178 [95 Cal.Rptr. 761, 486 P.2d 657].) As the court said in *In re Thomson* (1980) 104 Cal.App.3d 950, 954 [164 Cal.Rptr. 99]: "It is the purest sophistry to argue there is no increase in punishment. A determinate term followed by a precise time for parole has been lengthened. That is ex post facto."

*People* v. *Tabucchi* (1976) 64 Cal.App.3d 133 [134 Cal.Rptr. 245], though decided before the Determinate Sentencing Act, is somewhat analogous to and lends support for our conclusions in this case. In *Tabucchi,* a defendant who had pleaded guilty to a drug related charge attacked the trial court's denial of his motion to withdraw the plea on the ground that he had not been advised that a special statute required that he serve a minimum of three of his five-year maximum sentence before he would be eligible for parole. (*Id.,* at p. 137.) Thus the facts are analogous to the case at bench because the controlling statute required a minimum term to be served before the defendant would be eligible for parole. The Court of Appeal held that because the right to parole is critical to criminal defendants and because it was widely known by defendants at that time that the parole authorities had a policy of considering a prisoner eligible for parole after he had served one-third of his maximum sentence, a statutorily required minimum term for parole purposes of a greater duration than usual was a direct consequence of conviction requiring advisement before a guilty plea could be validly accepted. (*Id.,* at pp. 142-143.)

 We conclude that the parole period petitioner was required to serve was a direct penal consequence of being convicted of second degree murder, and petitioner should have been advised of that consequence before entering his plea.[4]

Turning to the form of advisement, we take our cue from the form of advisement required in informing a defendant of the "possible range of punishment." That phrase has been interpreted to require nothing more than

---

[4]Whether to limit a decision to having only a prospective effect involves a consideration of (1) the purpose of the newly established rule, (2) the extent of reliance on the old rule, and (3) the effect retroactive application would have upon the administration of justice. (*In re Tahl* (1969) 1 Cal.3d 122, 134 [81 Cal.Rptr. 577, 460 P.2d 449].) For the same reasons enunciated by the Supreme Court in that decision, we decline to give the rule that defendants must be advised of the parole consequences of a guilty plea retroactive effect. Except as to the present defendant, the rule we adopt herein will be applicable to guilty pleas taken after this opinion becomes final. (See *People* v. *Cook* (1978) 22 Cal.3d 67, 99, fn. 18 [148 Cal.Rptr. 605, 583 P.2d 130].)

an advisement of the maximum and minimum prison terms that may be imposed upon conviction. No further details are required.

As we perceive it, a defendant should be made aware of the maximum adverse parole consequences of his plea, such as "after you have served your prison term you may be subject to a maximum parole period of___ years." Detailed explanation as to other eventualities, such as parole revocation, extension of period of parole due to incarceration for revocation, waiver of parole, discharge from parole earlier than the maximum parole term, would only have the potential of confusing the issue. As the court said in *Scoggins* v. *Superior Court* (1977) 65 Cal.App.3d 873, 877 [135 Cal.Rptr. 619]: "Common sense dictates that the court need only apprise defendant of the sentence possibilities in a general fashion. It is not necessary that defendant be given a detailed lecture on criminal procedure as it pertains to all the various dispositional devices available. We reiterate the goal is a voluntary and provident plea and a record by which a reviewing court can judge the attainment of that goal."

Finally, respondent argues that, assuming error, the error was not prejudicial. Before petitioner can obtain relief, "he must show that he was prejudiced by the trial court's failure to so advise. He must make a showing . . . that he did not know of the direct consequences of the plea and, had he known, he would not have pleaded guilty." (*People* v. *Wagoner* (1979) 89 Cal.App.3d 605, 611 [152 Cal.Rptr. 639]; Pen. Code, § 1018.) Petitioner has met that burden. It is undisputed that prior to taking the plea he was not advised of the five-year mandatory period of parole he would be required to serve after serving his prison term. Promptly after becoming aware of the parole consequence, petitioner sought to withdraw his plea on the ground he was not aware of this consequence. The clear inference from this record is that had he been aware of the parole consequence, he would not have pled guilty. Under these circumstances, we see no room for holding that the error was nonprejudicial.

Let a writ of habeas corpus issue directing the Superior Court of Kern County to permit petitioner to set aside his plea of guilty and the judgment of conviction entered thereon, and to reinstate the original charges.

Zenovich, J., and Martin, J., concurred.

A petition for a rehearing was denied August 3, 1983.