[No. S026837. Dec. 2, 1993.]

In re SANDY LEE MOSER on Habeas Corpus.

344

---

**COUNSEL**

Richmond M. Flatland, under appointment by the Supreme Court, Riordan & Rosenthal, Dennis P. Riordan and Dylan L. Schaffer for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama and Ronald A. Bass, Assistant Attorneys General, Ronald E. Niver and Catherine A. Rivlin, Deputy Attorneys General, for Respondent.

## OPINION

GEORGE, J.—In this case we must decide under what circumstances a defendant who has pleaded guilty may obtain relief on habeas corpus when, prior to entry of the plea, the trial court correctly advised the defendant of the length of the potential prison term, but erroneously advised the defendant as to the length of time he or she would remain on parole following release from prison.

As we shall explain, a defendant who has pleaded guilty after receiving inadequate or erroneous advice from the trial court with regard to the potential consequences of a plea generally is entitled to obtain relief only by establishing that he or she was prejudiced by the erroneous advice, i.e., by establishing, in the present context, that but for the trial court's erroneous advice with regard to the applicable parole term, the defendant would not have entered the guilty plea. Absent such a showing of prejudice, a defendant who has received erroneous advice regarding the length of parole can obtain relief only if the period of parole imposed conflicts with a specific, negotiated term of the plea agreement.

As discussed hereafter, in the present case the proceedings in the superior court on the habeas corpus petition did not focus upon, or resolve, the question whether petitioner was prejudiced by the trial court's erroneous advice regarding the consequences of the plea, or the question whether the period of parole was a specific, negotiated term of petitioner's plea agreement. Under these circumstances, we conclude that this matter should be remanded to the superior court to provide both parties the opportunity to present evidence relevant to these issues, and to enable the superior court to consider petitioner's claim in light of the governing legal principles set forth in this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, Sandy Lee Moser, initially was charged with first degree murder and a firearm-use enhancement allegation arising from the killing of his former lover. Petitioner ultimately pleaded guilty to second degree murder in exchange for a reduction of the charges and currently is incarcerated in state prison pursuant to a judgment of conviction of second degree murder. In the present habeas corpus petition, he seeks an order that would vacate the judgment of conviction and permit him to withdraw his plea of guilty.

In addressing petitioner's request for relief, we begin by briefly summarizing the evidence introduced against petitioner at the preliminary hearing in the underlying criminal proceeding.

On the evening of September 29, 1985, the victim, Carol Young, was babysitting for the children of a friend, Teri Russell, at Russell's home in the Humboldt County town of Arcata. Young was joined by petitioner, her former lover (with whom she had a child, born in 1982). At 10:45 p.m., Young telephoned Russell, telling her, "It's time to come home now, there's going to be trouble." Russell asked, "Is it Sandy?" Young replied, "Yes."

Teri Russell returned home approximately 20 minutes later. She found Carol Young dead, the victim of multiple gunshot wounds. Petitioner was gone.

Later that same evening, petitioner awakened an acquaintance, Thomas Stover, at Stover's residence, located in the Mendocino County town of Redwood Valley. Petitioner, in an excited state, told Stover, "I blew Carol away. . . . I blew her away, bam, bam, bam." Petitioner asked Stover to assist him in concealing his automobile, and mentioned that he wanted to hide for a day. Petitioner also said he was going to kill himself. After siphoning some gasoline for his automobile, petitioner drove away. At some point thereafter, he was arrested for the murder of Young.

Robert Morris, a Humboldt County forensic pathologist, determined that the victim had been shot repeatedly at close range. In the course of the autopsy he performed, he identified a "defensive" bullet wound to the victim's wrist, and powder marks on her palms, suggesting that the victim had attempted to grab the firearm. Based upon powder burns located near the fatal gunshot wound to the victim's neck, Morris opined that "the gun [had been] forced hard against the [victim's] skin, hard enough to cause a ridge to come up," allowing the bullet to enter, exit, and reenter the victim's neck. The bullet thereafter pierced the base of the victim's skull, tearing through her brain.

Following the preliminary hearing, petitioner was held to answer on a charge of first degree murder (Pen. Code, §§ 187, 189)[1] and an allegation of personal use of a firearm (§ 12022.5).

In May 1987, petitioner entered a negotiated plea of guilty to second degree murder, a crime punishable by a prison term of 15 years to life. (§ 190, subd. (a).) The trial court described the plea agreement as follows: "[T]he agreement is that you will plead guilty to the [c]ount in the Information agreed or stipulated to be a second degree murder charge. The District Attorney will dismiss the arming [sic] allegation. Is that the agreement?" Petitioner responded affirmatively. The plea agreement nearly halved the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

potential minimum sentence of 27 years to life faced by petitioner (had he elected to proceed to trial on the charge of first degree murder, been found guilty of that charge, and been found to have personally used a firearm, the latter finding at that time invoking an additional two-year prison term). (§ 190, subd. (a); former § 12022.5.)

Before accepting petitioner's plea of guilty, the trial court fully and accurately advised petitioner of his constitutional rights. The court also accurately advised petitioner that the mandatory penalty prescribed by statute for conviction of murder in the second degree was confinement in the state prison for a term of 15 years to life. In addition, however, the trial court incorrectly advised petitioner, as follows, with regard to the potential parole term: "Do you understand that once you have concluded your term in prison, that there will be a period of parole which cannot exceed forty-eight months, and it works—actually, the term is thirty-six months; but if you add parole violations spaced just correctly, you could serve an additional forty-eight months in prison if the Board [of Prison Terms] determined that there should be a return on each violation." In fact, the applicable statute provides a maximum lifetime period of parole upon a conviction of second degree murder. (§ 3000.1, subd. (a).)[2]

The trial court inquired whether petitioner's plea was freely and voluntarily made, and whether there was a factual basis for the plea, pursuant to section 1192.5, but improperly failed to advise petitioner of his right to withdraw the plea in the event the trial court at the time of sentencing withdrew its approval of the terms of the plea agreement (§ 1192.5).[3]

Upon the trial court's acceptance of the negotiated plea, the People, pursuant to the terms of the plea agreement, moved to strike the firearm-use allegation. The parties waived a formal probation report, recognizing that there was only one possible prison term for second degree murder—fifteen years to life in the state prison. (§ 190, subd. (a).)

At the sentencing hearing conducted in June 1987, petitioner submitted a letter to the trial court explaining that he had entered his guilty plea "to spare

---

[2]Section 3000.1, subdivision (a), provides: "In the case of any inmate sentenced under Section 1168 for any offense of first or second degree murder with a maximum term of life imprisonment, the period of parole, if parole is granted, shall be the remainder of the inmate's life."

The trial court's error apparently stemmed from its improper reliance upon section 3000, subdivisions (a) and (d), which prescribe a three-year parole term (that can be extended to four years) where a determinate sentence has been imposed.

[3]Section 1192.5 provides in pertinent part: "If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so."

those I love from the emotional pain and indignity of a trial."[4] The trial court thereafter imposed the mandatory sentence of 15 years to life in the state prison and advised petitioner of his appeal rights. In advising petitioner as to the parole consequences of his plea, however, the trial court repeated its earlier error, stating: "Once you have completed the term of imprisonment that I've just imposed upon you, there is a period of parole which is thirty-six months but which can extend to forty-eight months if there should be violations that are spaced just right."

The trial court also informed petitioner that he was obligated to pay a mandatory restitution fine, prescribed by section 13967, subdivision (a), of the Government Code.[5] Noting that petitioner had not been advised of this consequence of his plea, the trial court determined that there was "only one equitable thing to do and that is to impose the minimum fine." The court gave petitioner the option of withdrawing his plea in lieu of accepting the minimum fine, but petitioner accepted the minimum fine.

No appeal was filed, and petitioner was committed to the custody of the director of corrections to serve the term of imprisonment imposed by the court.

Three years later, in July 1990, petitioner filed a petition for writ of habeas corpus in the superior court, seeking leave to withdraw his guilty plea on the ground that the trial court and petitioner's counsel had advised him improperly as to the consequences of his plea, and that counsel improperly had informed petitioner that the case presented no appealable issues. In the

---

[4]Petitioner's statement was as follows:

"Your Honor, the reason I'm writing this statement is because of the difficulty I have trying to express my thoughts and feelings verbally. To everyone who has been affected by this tragedy, all that I can say is that I'm sorry for hurting you, especially my daughter Lisa, whom I love with all my heart.

"I plead guilty to this charge in order to spare those I love from the emotional pain and indignity of a trial. Perhaps I would have received a manslaughter if I had went to trial, but I really didn't see any purpose served by reopening wounds.

"To say that I understand why or what occurred would only be speculation on my part. After all this time, it still seems like a nightmare I can't wake up from. It just doesn't make any sense.

"In conclusion, I would like to thank my attorney, Mr. Rael, for all his efforts on my behalf and the Court for the opportunity to present this statement through my counsel. Thank you. Sandy Lee Moser."

[5]Government Code section 13967, subdivision (a), then provided in pertinent part: "Upon a person being convicted of any crime in the State of California, the court shall, in addition to any other penalty provided or imposed under the law, order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code and to pay restitution to the victim . . . . In addition, if the person is convicted of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100) and not more than ten thousand dollars ($10,000). . . ."

memorandum that accompanied his petition, petitioner argued that the trial court had failed to advise him of the correct parole term. He did not specifically allege, however, that he would not have pleaded guilty to second degree murder had he been properly advised.

The superior court issued an order to show cause. The People then filed a return conceding the trial court's error in incorrectly advising petitioner of the applicable parole term prescribed by statute for second degree murder, but the return failed to note or rely upon petitioner's failure to allege or demonstrate that he had been actually prejudiced by the error, i.e., that petitioner would not have entered the plea had he been advised accurately of the parole consequences. Indeed, the return did not argue that habeas corpus relief should be denied altogether but instead, noting that the evidence in the case had "scattered to the wind," urged that "the appropriate remedy is specific performance of the plea bargain to which all parties agreed at the time of the sentence"—a three-year parole term subject to extension to four years. The return asserted that the Board of Prison Terms (BPT), the statutory entity charged with administering the parole process, had assented to such a remedy. The People did not argue that petitioner's claim was untimely; on the contrary, the People acknowledged that "the writ is the proper remedy and vehicle to redress the wrong."

The superior court rejected the People's arguments, concluding that specific performance of the erroneous parole term would result in "a subversion of the appropriate penal statute, [would] impose a sanction not provided in the Penal Code, and [would] impose a created punishment. Such creative sentencing ought not to be countenanced. And will not be." The court also determined that specific performance might not provide an adequate remedy, observing that the BPT, which possesses the authority to determine when petitioner should be released from prison on his 15 years-to-life term, might be reluctant to release him on parole in view of the shortening of his parole term from life to 36 months. Accordingly, the trial court issued an order setting aside the conviction and permitting petitioner to withdraw his guilty plea.

The People appealed, again arguing that specific performance was the appropriate remedy. The Court of Appeal reversed the judgment of the superior court, determining that the lower court had abused its discretion in failing to consider the prejudice that the People would incur in the event petitioner were permitted to withdraw his guilty plea. Seeking guidance from our decision in *People* v. *Walker* (1991) 54 Cal.3d 1013 [1 Cal.Rptr.2d 902, 819 P.2d 861], the Court of Appeal concluded that in view of the conceded error, the BPT's assent to a minimum parole term, and the detriment to the

People were the plea agreement to be set aside at such a late date, the appropriate remedy was to order the lower court to enter a new judgment directing the BPT to impose no more than the minimum, five-year term of parole prescribed in section 3000.1, subdivision (b), in the event petitioner is released from prison.[6]

We granted petitioner's ensuing request for review, and directed the parties to address the following issue: "[W]hether a trial court's misadvice as to the applicable period of parole for a defendant pleading guilty constitutes a violation of the plea agreement or a violation of the court's duty to advise of the consequences of the plea, and, if the defendant is entitled to relief, what is the appropriate remedy."[7]

## II. Discussion

Petitioner contends the trial court's misadvice as to the applicable parole term, and as to the potential period of reincarceration (should petitioner be released on parole and subsequently violate its terms), constituted a violation of the court's duty to advise petitioner of the consequences of his guilty plea. He also contends that the lower court's failure to advise him properly as to the parole consequences of his plea resulted in a sentence that significantly deviates from the terms of the negotiated plea. Petitioner argues that, in view of these alleged errors, he is entitled to issuance of an order vacating the judgment of conviction and permitting him to withdraw his plea of guilty.

In response, the People contend that the lower court's misadvice constituted harmless error, and that even if petitioner is deemed to have been prejudiced by the lower court's misadvisement, the proper remedy at this juncture is "substantial" specific performance of the plea agreement, resulting in the imposition of a five-year term of parole.

In analyzing the parties' contentions, we adhere to the framework set forth in our decision in *People* v. *Walker, supra*, 54 Cal.3d 1013, 1019-1020,

---

[6]Section 3000.1, subdivision (b), provides in pertinent part: "Notwithstanding any other provision of law, when any person referred to in [section 3000.1] subdivision (a) has been released on parole from the state prison, and has been on parole continuously for . . . five years in the case of any person imprisoned for second degree murder, since release from confinement, the [BPT] shall, within 30 days, discharge such person from parole, unless the [BPT], for good cause, determines that such person will be retained on parole. . . ."

[7]Notwithstanding the language of our order granting review, the People reiterate an argument, raised for the first time in the Court of Appeal (and impliedly rejected by that court), that the underlying habeas corpus petition, filed three years after entry of petitioner's guilty plea, is untimely, citing our decision in *In re Ronald E.* (1977) 19 Cal.3d 315, 321-322 [137 Cal.Rptr. 781, 562 P.2d 684]. In view of the People's failure to raise the timeliness issue in the trial court, we deem that issue to have been waived.

where we explained that resolution of the issues presented "requires consideration of two related but distinct legal principles. (See *People* v. *Glennon* (1990) 225 Cal.App.3d 101, 104 [276 Cal.Rptr. 1].) [¶] The first principle concerns the necessary advisements whenever a defendant pleads guilty, whether or not the guilty plea is part of the plea bargain. The defendant must be admonished of and waive his constitutional rights. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) In addition, and pertinent to this case, the defendant must be advised of the direct consequences of the plea. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].) [¶] ▆ The second principle is that the parties must adhere to the terms of a plea bargain. (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 860 [187 Cal.Rptr. 441, 654 P.2d 211].) [¶] In any given case, there may be a violation of the advisement requirement, of the plea bargain, or of both. Although these possible violations are related, they must be analyzed separately, for the nature of the rights involved and the consequences of a violation differ substantially. Indeed, much of the confusion engendered by the appellate decisions on this issue results from a blurring of the distinction between these principles."

Thus, we first consider whether the trial court's misadvisement regarding the length of petitioner's term of parole constituted a violation of the court's obligation to advise petitioner of the direct consequences of his guilty plea, and, if so, whether such a violation entitles petitioner to obtain the relief he now seeks. Thereafter, we consider the separate question whether the imposition upon defendant of the parole term mandated by statute constituted a violation of the parties' plea agreement.

## A. *Advisement of the consequences of the plea*

▆ Our initial inquiry focuses upon whether the trial court's misadvisement with regard to the applicable parole term violated its obligation to inform petitioner of the direct consequences of his plea. In *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086], we held that a defendant who pleads guilty "shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute . . . ." Although this court never has addressed the question whether *Bunnell* compels a trial court to advise a defendant as to the mandatory parole consequences of a guilty plea, the People do not argue that the parole consequences of such a plea fall outside *Bunnell*'s requirement of a proper advisement, and decisions rendered by the Courts of Appeal uniformly have concluded that a mandatory term of parole is a "direct consequence" of a plea and thus a matter of which a trial court is obligated

to advise a defendant under *Bunnell.* (See, e.g., *In re Carabes* (1983) 144 Cal.App.3d 927, 931-932 [193 Cal.Rptr. 65]; *People* v. *McMillion* (1992) 2 Cal.App.4th 1363, 1367-1368 [3 Cal.Rptr.2d 821]; *People* v. *Victorian* (1992) 2 Cal.App.4th 954, 957 [4 Cal.Rptr.2d 460]; see also § 1170, subd. (c) [in imposing a determinate sentence, the trial court shall inform the defendant "that as part of the sentence after expiration of the term he or she may be on parole for a period as provided in Section 3000"]; Cal. Judges Benchbook, Criminal Pretrial Proceedings (CJER 1991) Commencing the Action, § 1.34, p. 35 [defendant shall be asked whether he or she understands "that after you have served your prison term you may be subject to a maximum parole period of __ years?"].) We agree with this line of authority and therefore conclude that where the trial court fails to advise a defendant of the mandatory parole consequences of his or her guilty plea or, as in the present case, misadvises a defendant as to those consequences, *Bunnell* error has occurred.

Having found such error, we next must determine whether this error, alone, entitles petitioner to the relief he now seeks. Petitioner claims that, in view of the trial court's misadvisement, he is entitled to withdraw his plea of guilty. As we explained in *People* v. *Walker, supra,* 54 Cal.3d 1013, however, a defendant (even on direct appeal) is entitled to relief based upon a trial court's misadvisement only if the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement. (*Id.* at pp. 1022-1023.) A fortiori, the defendant must demonstrate prejudice when, as in the present case, the issue is raised on habeas corpus. (See *In re Ronald E., supra,* 19 Cal.3d at pp. 325-326; *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561]; *In re Saunders* (1970) 2 Cal.3d 1033, 1047-1048 [88 Cal.Rptr. 633, 472 P.2d 921]; *In re Carabes, supra,* 144 Cal.App.3d at p. 933; accord, *United States* v. *Timmreck* (1979) 441 U.S. 780, 784 [60 L.Ed.2d 634, 638-639, 99 S.Ct. 2085] [a federal conviction based upon a guilty plea is not subject to collateral attack when the trial court failed to advise the defendant of the mandatory term of parole as required by rule 11 of the Federal Rules of Criminal Procedure (18 U.S.C.) but no actual prejudice is shown].)[8]

As noted above, in the present case the petition for writ of habeas corpus filed in the superior court did not specifically allege prejudice. In their return

[8]In *People* v. *Walker, supra,* 54 Cal.3d 1013, 1023, in addition to explaining that a defendant is required to establish prejudice resulting from the trial court's misadvisement as to the consequences of a guilty plea, we also held that "the error is waived absent a timely objection." That procedural bar is inapplicable in the present case, however, because unlike *Walker,* the present case does not involve a trial court's imposition at the sentencing hearing of a sentence at variance with the advice given at the earlier plea proceeding—a situation in which a defendant reasonably may be required to bring the discrepancy to the court's attention by a timely objection at the sentencing hearing. Rather, under the present

to the petition, however, the People failed to bring this omission to the superior court's attention, and thus the question of prejudice never was litigated or resolved at the trial court level.[9] Although we do not believe it would be appropriate to grant relief to petitioner in the absence of a showing of prejudice, we conclude that under these circumstances the interests of justice would best be served by a remand of the matter to the superior court for a hearing and determination of the question whether petitioner was prejudiced by the trial court's misadvisement.[10]

## B. *Violation of the plea agreement*

In addition to his contention that he was prejudiced by the trial court's misadvisement regarding the length of his parole term, petitioner contends that under the circumstances set forth above, imposition of a lifetime term of parole constituted a violation of the parties' plea agreement, entitling petitioner to obtain relief without regard to the question whether he was prejudiced by the trial court's misadvisement.

Petitioner's claim as to the asserted breach of the plea agreement is distinct from the question whether the trial court properly fulfilled its duty to advise him regarding the direct consequences of his plea. As we explained in *People* v. *Walker, supra,* 54 Cal.3d 1013, in contrast to a violation of the trial court's advisement duty (which, as we have seen, entitles a defendant to relief only if the defendant can demonstrate prejudice), "[a] violation of a plea bargain is not subject to harmless error

circumstances, where nothing in the record suggests that petitioner had any reason to question the accuracy of the trial court's advisement, it would be unfair to hold that petitioner should have objected to the trial court's erroneous description of the applicable period of parole. (See also *In re Robinson* (1990) 216 Cal.App.3d 1510, 1513-1514 [265 Cal.Rptr. 574] [defendant who was not advised that, as a consequence of an insanity plea, his commitment could be extended indefinitely, was not barred from collaterally challenging the commitment several years later]; *People* v. *McIntyre* (1989) 209 Cal.App.3d 548, 558 [257 Cal.Rptr. 271] [same]; see also *People* v. *McMillion, supra,* 2 Cal.App.4th at p. 1368 [following a trial court's failure to advise as to parole, a defendant should not be required "to infer the missing information"].)

[9]At the hearing on the order to show cause, the People (represented by the Humboldt County District Attorney's office) acknowledged: "[T]his is really a case [in] which the court has two options. The choice of remedy: Whether the plea shall be withdrawn, or whether the court should order specific performance of the [plea] agreement. . . . [W]e concede there is an error here and the writ is the proper remedy and vehicle to redress the wrong."

[10]A showing of prejudice also is a necessary prerequisite to the establishment of petitioner's related claim of ineffective assistance of counsel. (See *People* v. *Ledesma* (1987) 43 Cal.3d 171, 217-218 [233 Cal.Rptr. 404, 729 P.2d 839].) If petitioner establishes that the trial court's misadvisement regarding the length of his parole term was prejudicial, however, petitioner would be entitled to relief without regard to whether defense counsel's performance " 'fell below an objective standard of reasonableness . . . under prevailing professional norms.' " (*Id.* at p. 216 [quoting *Strickland* v. *Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052].) Thus, we need not, and do not, reach petitioner's contention that defense counsel's performance was constitutionally deficient.

analysis. A court may not impose punishment significantly greater than that *bargained for* by finding the defendant would have agreed to the [additional] punishment had it been made a part of the plea offer. 'Because a court can only speculate *why a defendant would negotiate for a particular term of a bargain*, implementation should not be contingent on others' assessment of the value of the term to defendant. [¶] . . . [¶] Moreover, the concept of harmless error only addresses whether the defendant is prejudiced by the error. However, in the context of a broken plea agreement, there is more at stake than the liberty of the defendant or the length of his term. "At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice . . . ." ' [Citations.]" (*People* v. *Walker, supra*, 54 Cal.3d at p. 1026, italics added.)

The distinction between a mere misadvisement with regard to the consequences of a guilty plea and a violation of a plea agreement is perhaps best illustrated by a comparison of two United States Supreme Court decisions, *United States* v. *Timmreck, supra*, 441 U.S. 780, and *Santobello* v. *New York* (1971) 404 U.S. 257 [30 L.Ed.2d 427, 92 S.Ct. 495].

In *Timmreck*, as part of a plea agreement in which other charges were dismissed, the defendant pleaded guilty to the charge of conspiracy to distribute controlled substances. Prior to accepting the plea, the federal district court advised the defendant of the maximum possible sentence and fine that lawfully could be imposed on the conspiracy-to-distribute charge, but failed to inform him of the mandatory special term of parole carried by such a charge. The defendant thereafter pleaded guilty, and the court accepted the plea. At a subsequent sentencing hearing, the court sentenced the defendant to serve a term of imprisonment, followed by a special parole term of five years, and to payment of a fine. No objection to the sentence was raised at the time, and the defendant did not appeal from his conviction.

Two years later, the defendant moved to vacate the sentence on the ground that the trial court had erred in failing to advise him of the mandatory special term of parole before accepting the plea. While recognizing that the district court had violated rule 11 of the Federal Rules of Criminal Procedure (18 U.S.C.) in failing to advise the defendant of the mandatory special term of parole prior to accepting the plea, the Supreme Court in *Timmreck* held that such a misadvisement, in itself, did not provide a basis for setting aside the conviction on a collateral attack. Specifically noting that the defendant had not argued "that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty" (*United States* v. *Timmreck, supra*, 441 U.S. at p. 784 [60 L.Ed.2d at pp. 638-639]), the *Timmreck* court found that the defendant's "only claim is

of a technical violation" of the advisement rule (*ibid.*) which could not reasonably be found to have "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure' " so as to warrant collateral relief. (*Ibid.*, quoting *Hill* v. *United States* (1962) 368 U.S. 424, 428 [7 L.Ed.2d 417, 421, 82 S.Ct. 468].) Thus, the facts of *Timmreck* provide an example of a simple misadvisement error.

*Santobello* v. *New York, supra,* 404 U.S. 257, by contrast, illustrates the circumstances that give rise to a violation of a plea agreement. In *Santobello,* the defendant, after having been indicted for participating in various gambling activities, entered into plea negotiations with the local prosecutor. Following these negotiations, the prosecutor agreed to permit the defendant to plead guilty to a lesser offense, which carried a maximum prison sentence of one year, and the prosecutor further agreed to make no recommendation regarding the sentence. Numerous delays ensued and, by the date set for sentencing, another prosecutor had replaced the prosecutor who had negotiated the plea agreement. The new prosecutor recommended to the sentencing court that the defendant receive the maximum, one-year sentence. Defense counsel interposed an objection, citing the promise made on behalf of the state by the initial prosecutor, prior to the entry of the defendant's plea of guilty, that a sentencing recommendation would not be made. The sentencing judge rejected defense counsel's argument and imposed the maximum prison sentence, on the basis that the defendant's probation report, reflecting his long criminal history, indicated the defendant was a recidivist unamenable to probationary supervision.

In vacating the judgment rendered by the trial court, the Supreme Court held in *Santobello* that the plea-negotiating process "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree *on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.* [¶] On this record, *petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor.* It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. . . . That the breach of agreement was inadvertent does not lessen its impact." (*Santobello* v. *New York, supra,* 404 U.S. at p. 262 [30 L.Ed.2d at p. 433], italics added.)

The contrast between the *Timmreck* and *Santobello* decisions provides a useful guide in evaluating the proper characterization of the error

that occurred in the present case. Based solely upon the record of the plea proceedings, it would appear that the indicated length of the parole term was not a part of the plea agreement, but simply constituted a misadvisement by the trial court. As set forth above, prior to accepting petitioner's plea of guilty, the trial court recited on the record the terms of the parties' plea agreement, noting that petitioner had agreed to plead guilty to the lesser charge of second degree murder in exchange for the People's agreement to forego a trial on the first degree murder charge and to dismiss the firearm-use allegation. The trial court inquired of petitioner whether the court's statement was an accurate recitation of the plea agreement, and he responded affirmatively. Nothing in the record indicates that the length of the parole term, improperly described by the trial court, was an element of the parties' plea negotiations and resulting agreement so as to render imposition of the lifetime period of parole mandated by statute a violation of the plea agreement. (See also *In re Chambliss* (1981) 119 Cal.App.3d 199, 202 [173 Cal.Rptr. 712].)

Petitioner's argument that the imposition of a lifetime period of parole should be treated as a violation of the plea agreement is twofold. First, petitioner contends that, because in *People* v. *Walker, supra,* 54 Cal.3d 1013, we held that the imposition of a substantial restitution fine that had not been included in the plea agreement constituted a violation of the agreement, the imposition of the statutorily mandated lifetime period of parole similarly should be found to constitute a violation of the plea agreement. This argument rests upon an erroneous, overbroad reading of *Walker.*

In *Walker,* the offense to which the defendant had agreed to plead guilty carried a potential seven-year sentence and a $10,000 punitive fine, but under the negotiated plea agreement the defendant was to receive a five-year term of imprisonment and no punitive fine. At the subsequent sentencing hearing, the trial court imposed the agreed-upon five-year sentence but also a substantial ($5,000) restitution fine.

In concluding that the imposition of such a substantial fine constituted a violation of the plea agreement in *Walker,* we implicitly found that the defendant in that case reasonably could have understood the negotiated plea agreement to signify that no substantial fine would be imposed. Moreover, in reaching this conclusion, we reasoned that, because the amount of an appropriate restitution fine imposed upon a defendant could vary significantly depending upon the specific facts of a given case, "the restitution fine

should generally be considered in plea negotiations." (*People v. Walker, supra,* 54 Cal.3d at p. 1024.)[11]

■ Unlike the amount of the restitution fine at issue in *Walker,* the length of a parole term is *not* a permissible subject of plea negotiations. The lifetime term of parole challenged in the present case is a statutorily mandated element of punishment imposed upon every defendant convicted of second degree murder. (§ 3000.1, subd. (a).) Neither the prosecution nor the sentencing court has the authority to alter the applicable term of parole established by the Legislature. (See *People v. McMillion, supra,* 2 Cal.App.4th at pp. 1368-1369; *People v. Victorian, supra,* 2 Cal.App.4th at p. 959.)[12] ■ In the present case, if (as appears from the record) the subject of parole was not encompassed by the parties' plea negotiations, imposition of the statutorily mandated term of parole would not constitute a violation of the parties' plea agreement. (See *In re Chambliss, supra,* 119 Cal.App.3d 199, 202-203.)

Second, at oral argument, petitioner's counsel argued that, even if the present record fails to indicate that the term of parole constituted an element of the parties' plea agreement, petitioner's potential parole term may have been discussed during plea negotiations, and the prosecutor may have made promises or inducements regarding the term of parole. Counsel further argued that it would be unfair simply to assume that no such discussions occurred, when the People's argument in the superior court appeared to concede that the three-year term of parole was part of the parties' plea agreement, and petitioner never was put on notice as to the necessity of introducing evidence directed to this issue.

Counsel's argument is well taken. "In most cases an examination of the record will reveal the truth or falsity of the petitioner's allegations, thus

[11]Although we recognized in *Walker* that, in general, the specific amount of the restitution fine to be imposed on a defendant under Government Code section 13967 is a proper subject of plea negotiations, we also noted that, because the applicable statute then *required* the court to impose a restitution fine of at least $100 absent an express finding of "compelling and extraordinary reasons" (§ 1202.4, subd. (a)), the minimum fine had to be imposed in that case inasmuch as the trial court had made no such finding. (See *People v. Walker, supra,* 54 Cal.3d at pp. 1027-1028.)

[12]Contrary to the People's contention, the provisions of section 3000.1, subdivision (b) (see, *ante,* p. 350, fn. 6) are incompatible with the People's proposed "compromise" remedy, adopted by the Court of Appeal, under which petitioner would be guaranteed a maximum parole term of five years. Under section 3000.1, subdivision (b), a person convicted of second degree murder who is released on parole must satisfactorily complete five years on parole *before* the BPT determines whether or not to discharge that person from parole. In effect, the person must "earn" the right to reduce the lifetime term of parole to a five-year term. Thus, the applicable statute precludes setting the parole term at five years in advance of the person's release from prison.

obviating the need for an evidentiary hearing." (*People* v. *West* (1970) 3 Cal.3d 595, 611 [91 Cal.Rptr. 385, 477 P.2d 409].) In light of the nature of the People's argument in the superior court in response to the order to show cause, however, we believe it would be inappropriate to foreclose petitioner from presenting evidence relating to whether the length of petitioner's term of parole was an element of the plea negotiations. Under the unusual circumstances presented by this case, we conclude this question should be the subject of further proceedings on remand to the superior court. (See *Santobello* v. *New York*, *supra*, 404 U.S. 257, 262 [30 L.Ed.2d 427, 433].)[13]

## III. Conclusion

The judgment of the Court of Appeal is reversed, and the matter is remanded to the Court of Appeal with directions to vacate the judgment of the superior court and remand the matter to the superior court for further proceedings consistent with the views expressed in this opinion.

Lucas, C. J., Panelli, J., Arabian, J., and Baxter, J., concurred.

**MOSK, J.,** Dissenting.—The majority would reverse the judgment of the Court of Appeal and remand the matter to the trial court to permit defendant to make an allegation that he was prejudiced by the trial court's failure to advise him accurately of the parole consequences of his guilty plea. There is no need for such a remand; the allegation was supplied in the trial court by the People's concession that defendant was entitled to relief. Our remand is a waste of judicial resources.

There is also no basis for a remand to the trial court to determine whether the sentence imposed was a violation of the plea agreement: the People conceded the issue. I would affirm the judgment of the Court of Appeal directing that no more than a five-year term of parole be imposed on defendant.

I

The trial court informed defendant at the time of entry of the guilty plea, and again at sentencing, that he was subject to a term of fifteen years to life

---

[13]The dissenting opinion authored by Justice Kennard criticizes the majority for "provid-[ing] no guidance to the trial court in this case, and others like it, regarding the remedy to be afforded. . . ." (See, *post*, pp. 363-364.) Because the record before us provides no support for petitioner's claim of prejudice, or for his claim that a lifetime term of parole constitutes a violation of his plea agreement, it is unclear on the present record that petitioner is entitled to *any* remedy whatsoever. Under these circumstances, we believe it would be unwise to use this particular case as a vehicle for establishing a "bright-line" remedy that might not even apply in the present matter.

in prison, with parole for a period of either three or four years. After the finality of the judgment, defendant filed a petition for writ of habeas corpus alleging that the court had failed to advise him the guilty plea to a charge of second degree murder actually subjected him to lifetime parole, and that the imposition of a lifetime parole term would violate the plea bargain. Defendant contended that he should be permitted to withdraw his guilty plea.

It is true that defendant's petition for writ of habeas corpus failed to make the allegation that he would not have entered the guilty plea if he had been informed that he would be subject to lifetime parole. It is also true that such an allegation is generally required in order to make out a claim for relief on habeas corpus for a court's failure to advise a defendant of the consequences of a guilty plea. (*In re Ronald E.* (1977) 19 Cal.3d 315, 325-326 [137 Cal.Rptr. 781, 562 P.2d 684].)

However, the People's pleadings and arguments in this case supplied the missing allegation by conceding defendant's entitlement to relief.

The same deputy attorney general who appeared before us in this court stated in the return to the order to show cause and also in the points and authorities in support of the return: "For the reasons set forth above, respondent agrees that an error was committed by the trial court, but disagrees that the appropriate remedy is to permit petitioner to withdraw his plea. *Respondent respectfully requests that this court order specific performance of the plea bargain to which all parties agreed at the time of sentencing.*" (Italics added.)

Defendant obviously relied on this statement. His "denial" to the return declares that "[t]he sole issue before the court is the remedy which should be directed. Petitioner alleges that he should be allowed to withdraw his plea. Respondent argues for specific enforcement by way of reducing petitioner's parole period to the term he was advised of by the sentencing court."

At the hearing on the order to show cause, the People again conceded that defendant was entitled to relief because of the trial court's serious error in advising him of the parole consequences of his plea. At the hearing, the People, now represented by the Humboldt County District Attorney's office, argued: "this is really a case [in] which the court has two options. The choice of remedy: whether the plea shall be withdrawn, or whether the Court should order specific performance of the agreement."

The People continued: "So, *we concede there is an error here and the writ is the proper remedy and vehicle to redress the wrong.* [¶] It is our position

that a withdrawal of the plea would exploit the error and not enforce the benefits of it. [¶] The state[']s interest in this case is in preserving a conviction by providing Mr. Moser what he bargained for . . . ." (Italics added.)

In answer to defendant's claim that the court lacked authority to impose the shorter parole term, the People offered to stipulate to that form of relief: "And I submit the Court does, under the authority of Mancheno, Flores and Oberreuter particularly when both the District Attorney, the Attorney General and Board of Prison Terms are essentially parties to this action and indicate *we are willing to stipulate to a reduced parole period.* This is really an extraordinary commitment by the Board of Prison Terms. [¶] *The Attorney General and our office say yes, there was misadvice there. Mr. Moser should get the benefit of that misadvice* and that has been limited to a three year period of parole." The deputy district attorney pursued the point: "This state has an interest in preserving the conviction. We will benefit from a reduced parole period, and *we have agreed to accept that term.* We believe strongly there can be no error or prejudice in specifically enforcing that term." (Italics added.)

In rebutting defendant's claim that he was entitled to withdraw his plea, the People said: "[Counsel's] argument might have weight if the Board of Prison Terms or Attorney General were contesting the ability of this Court to so order three year term . . . . The Court has two choices, either withdraw the plea or specific enhancement [*sic*]. *There would be no prejudice or appeal from the Board nor from the Attorney General should the Court so order.*" (Italics added.)

In their appeal from the order permitting defendant to withdraw his guilty plea, the People did not contend that defendant was not entitled to relief because he had failed to allege prejudice. The issue was never raised. The People did argue on appeal that the petition for writ of habeas corpus had been untimely, but declared: "This case is less a case of inadequate admonition than a plea bargain in need of specific performance guarantees. As we demonstrate below, since respondent has not yet been released on parole, this court can insure that he gets the sentence for which he bargained, simply by ordering that his parole term, if any, be set at the fixed term imposed by the trial court. The Board of Prison Terms has agreed to this procedure. [¶] Neither an appellate court nor any court hearing a petition for writ of habeas corpus is restricted to the remedy of reversal *when prejudicial error is found.*" (Italics added.)

The People maintained that a reduced parole term was the proper remedy, and concluded: "Accordingly, for the reasons stated, appellant respectfully

asks that the order granting respondent's petition for writ of habeas corpus be reversed and, if the issue is reached on the merits, the People's offer of specific performance accepted." This same conclusion was repeated in the People's reply brief. As the People did not argue that defendant had failed to show prejudice, it is understandable that the Court of Appeal said nothing about defendant's failure to allege he would not have entered the plea if he had known he was subject to lifetime parole. Therefore that nonexistent issue should not detain us.

It seems patently clear that when the People conceded defendant's entitlement to relief in their return and at the hearing on the order to show cause, they necessarily conceded prejudice. "In a habeas corpus proceeding the return to the order to show cause must allege facts tending to establish the legality of the petitioner's detention; it is thus analogous to the complaint in civil actions. The traverse, which may incorporate the allegations of the petition, is analogous to the answer in civil actions. [Citations.] It is in this manner that the factual and legal issues are joined for review." (*In re Sixto* (1989) 48 Cal.3d 1247, 1252 [259 Cal.Rptr. 491, 774 P.2d 164].) Under this standard, it is impossible to understand how the issue of prejudice could be open on appeal, when the People conceded it below. The People's concession that defendant was entitled to relief should have limited the issues on review to the question of defining the appropriate relief. The trial court selected the remedy against which the People argued, but the People's appeal from this decision should not be considered to reopen the basic question of entitlement to relief.

Justice in this case requires the People to be held to their forthright concession in the trial court that the appropriate remedy in this matter is to reduce defendant's parole term.

## II

A negotiated guilty plea requires both parties to honor the agreement as to sentence. (*People* v. *Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861].) As a matter of due process, "[t]he punishment may not significantly exceed that which the parties agreed upon." (*Ibid.*)

In response to defendant's claim that the imposition of lifetime parole would be a violation of the plea agreement, the majority seem to say that unless the parole term was an express inducement to the plea, in the sense that the defendant can show on remand that he actually discussed it and relied on it in making the decision to enter the guilty plea, defendant is entitled to no relief at all—not even specific performance of the ultimate bargain. (Maj. opn., *ante*, pp. 355-356, 357.)

I disagree. A significant new term of punishment may not be added to the sentence ex post facto on the theory that because it was not a precise subject of negotiation, its absence was not a term of the negotiated plea. To permit an expanded term of punishment to be added on such a unique theory would be comparable to permitting a party to a contract to demand additional consideration after the fact for fulfillment of the bargain because the absence of that precise term was not discussed during negotiation or noted in the terms of the contract. Simple contract principles forbid such a result. (See *People* v. *McClellan, post,* pp. 367, 382-383 [24 Cal.Rptr.2d 739, 862 P.2d 739] (conc. & dis. opn. of Mosk, J.).)

As the majority concede, defendant is not required to establish he would not have entered the plea if he had known of the lifetime parole term in order to claim a violation of the bargain. (*People* v. *Walker, supra,* 54 Cal.3d at p. 1026.) He need only show that the court proposes to add a significant term of punishment to the bargained-for term. (*Ibid.*) "A court may not impose punishment significantly greater than that bargained for by finding the defendant would have agreed to the greater punishment had it been made a part of the plea offer. 'Because a court can only speculate why a defendant would negotiate for a particular term of a bargain, implementation should not be contingent on others' assessment of the value of the term to defendant. . . .' " (*Ibid.*)

Defendant did not bargain for lifetime parole, and the addition of such a term is obviously significant. "Courts should generally be cautious about deeming nonbargained punishment to be insignificant. The test whether a punishment greater than that bargained for is 'significant' under *Santobello* v. *New York* [(1971)] 404 U.S. 257 [30 L.Ed.2d 427, 92 S.Ct. 495] is stricter than the prejudice test for a mere failure to advise of the consequences of a nonbargained plea. Punishment that is not prejudicial, i.e., when it is not reasonably probable the defendant would not have pleaded guilty if informed of the punishment . . . may well be 'significant' if imposed after a negotiated plea." (*People* v. *Walker, supra,* 54 Cal.3d 1013, 1028, fn. 3.)

In *People* v. *Walker, supra,* 54 Cal.3d 1013, the defendant was advised that he might be subject to a penalty fine of $10,000, but not that he was subject to a mandatory restitution fine of up to $5,000. When the court imposed a $5,000 fine at sentencing, we said this was a significant deviation from the bargain. If this increase in mere financial penalty was a significant deviation in the terms of the sentence, certainly an increase in parole from three years to life necessarily is significant. This is not the type of minor addition to punishment, such as the addition of a standard term of probation supervision, that we can overlook as insubstantial. (See *Santobello* v. *New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495].)

The majority suggest that a "mere misadvisement" regarding the parole consequences of a plea would never be significant enough to be considered a violation of a plea agreement. (Maj. opn., *ante*, p. 354.) They rely on *United States* v. *Timmreck* (1979) 441 U.S. 780, 784 [60 L.Ed.2d 634, 638-639, 99 S.Ct. 2085], which held that a technical violation of rule 11 of the Federal Rules of Criminal Procedure (18 U.S.C.) regarding advising defendant of the parole consequences of his plea did not provide a basis for relief on habeas corpus. But that case did not present the issue of a violation of a plea agreement; it did not cite *Santobello* v. *New York*, *supra*, 404 U.S. 257, or analyze a due process claim such as that raised in this case. These omissions are not surprising, because the case did not involve a sentence bargain. (See *Carter* v. *McCarthy* (9th Cir. 1986) 806 F.2d 1373, 1377, fn. 4 [affirming relief on habeas corpus in part because the addition of a mandatory parole term not mentioned at the time of the plea exceeded the sentence defendant had been promised].) It is axiomatic that cases are not authority for propositions not considered.

That it would be a significant deviation from the agreed punishment to impose lifetime parole is clear from the forthright posture of the People below *conceding* defendant was entitled to relief from this deviation from the plea agreement, and arguing in favor of a reduction of the parole term. In fact, as I have noted, both the People and the Board of Prison Terms on behalf of the State of California offered to stipulate to a reduction in defendant's parole term. Justice demands we affirm the decision of the Court of Appeal granting defendant relief from a significant punishment for which he and the People did not bargain.

**KENNARD, J.,** Dissenting.—The majority is remanding this case to the superior court so that court can determine whether petitioner suffered prejudice when the trial court misstated the parole consequences of his plea of guilty to second degree murder. Like Justice Mosk, I see no need for a remand. As Justice Mosk observes in his dissenting opinion, the prosecution's failure to raise the issue of prejudice in its return to the habeas corpus petition is tantamount to a concession on that issue. Therefore, the majority's remand on the question of prejudice is unnecessary and a waste of judicial resources.

I find the majority's opinion troubling on yet another point. Left unresolved by the majority is the issue of what relief should be afforded a defendant who, as here, enters a guilty plea after receiving erroneous advice from the trial court regarding the parole consequences of that plea. This is the sole issue disputed by the parties, and the only issue on which petitioner sought review in this case. Because the majority does not resolve this issue,

it provides no guidance to the trial court in this case, and others like it, regarding the remedy to be afforded: should the trial court order "specific performance" of a statutorily unauthorized period of parole, or should the court allow withdrawal of the guilty plea?

Justice Mosk would permit the imposition of a parole term that is not authorized by statute. I cannot agree. In my view, withdrawal of the guilty plea is the only permissible relief, as I shall explain.

## I.

In May 1987, pursuant to a negotiated arrangement with the prosecution, petitioner agreed to plead guilty to second degree murder, a crime punishable by an indeterminate state prison term of 15 years to life. Before accepting the guilty plea, the trial court advised petitioner that, after serving the prison term for second degree murder, he would be released on parole. The court explained: "[T]here will be a period of parole which cannot exceed forty-eight months, and it works—actually, the term is thirty-six months; but if you add parole violations spaced just correctly, you could serve an additional forty-eight months in prison if the Board [of Prison Terms] determined that there should be a return on each violation." The court was wrong regarding the period of parole applicable to petitioner. A defendant who is convicted of second degree murder, and is given a maximum prison term of life imprisonment will be subject to an actual period of parole for "the remainder of the inmate's life." (Pen. Code, § 3000.1, subd. (a).)[1]

In May 1990, petitioner filed a petition for a writ of habeas corpus in the Superior Court of Humboldt County, asserting that, based on the trial court's erroneous advisement regarding parole, he should be allowed to withdraw his plea of guilty to second degree murder. The court issued an order to show cause. In the return to that order, the People conceded that the trial court's erroneous parole advisement entitled petitioner to relief. The appropriate relief, the People argued, should be not withdrawal of the guilty plea, but issuance of a writ of habeas corpus by the superior court directing that petitioner's parole be limited to the three-year period set forth by the trial court at the time of petitioner's plea of guilty to second degree murder. In his traverse to the People's return, petitioner disagreed that "specific performance" of the trial court's erroneous parole advice was the appropriate remedy, insisting that he was entitled to withdrawal of his plea of guilty.

At the hearing on the order to show cause, the superior court issued the writ of habeas corpus, setting aside the judgment of conviction and permitting petitioner to withdraw his guilty plea. On appeal, the People challenged

---

[1]Unless otherwise noted, further statutory references are to the Penal Code.

only the form of relief. The Court of Appeal reversed the judgment of the superior court, and reinstated petitioner's conviction for second degree murder. In addition, the appellate court directed that, upon petitioner's release on parole, the Board of Prison Terms impose a parole term of no more than five years.[2]

"Specific performance" of the three-year parole period that the trial court mentioned at the time of petitioner's plea, as well as the five-year parole period fashioned by the Court of Appeal, both violate the mandate of section 3000.1, subdivision (a), that a defendant sentenced to a life term for second degree murder is subject to lifetime parole. Under the circumstances of this case, the only appropriate remedy is to permit petitioner to withdraw his plea of guilty, as the following discussion demonstrates.

## II.

In *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086], this court held that before accepting a defendant's guilty plea, the trial court must tell the defendant of the direct consequences of the conviction, such as "the permissible range of punishment provided by statute" and any statutory "registration requirements." Subsequent decisions have made it clear that the period of parole a defendant must serve is a direct penal consequence of a conviction. (E.g., *People* v. *Victorian* (1992) 2 Cal.App.4th 954, 957 [4 Cal.Rptr.2d 460]; *In re Carabes* (1983) 144 Cal.App.3d 927, 932 [193 Cal.Rptr. 65].)

In this case, the majority acknowledges that the trial court committed *Bunnell* error when it misstated petitioner's potential parole term as 36 months when, in reality, petitioner was subject to lifetime parole. (Maj. opn., *ante*, at p. 352.) The People necessarily conceded prejudice to petitioner when they agreed, in their return to the order to show cause, that petitioner was entitled to relief. (See dis. opn. of Mosk, J., *ante*, at p. 361.)

A defendant who is prejudiced by a trial court's erroneous advisement or failure to warn regarding a direct consequence of a guilty plea is entitled to judicial relief. (See *People* v. *Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861].) In *Walker*, a defendant who pleaded guilty to a felony was ordered to pay a restitution fine of $7,000. (See Gov. Code, § 13967, subd. (a), which provides for imposition of a mandatory restitution fine of at least $100 but not more than $10,000 on a person convicted of a

---

[2]The Court of Appeal based the five-year parole term on section 3000.1, subdivision (b), allowing the Board of Prison Terms to discharge from parole any person who, following a conviction of second degree murder, "has been on parole continuously" for five years.

felony.) In telling the defendant of the direct consequences of his guilty plea, the trial court failed to mention the restitution fine. We concluded that relief from that misadvisement could take one of two forms: permitting withdrawal of the guilty plea or reducing the amount of the restitution fine to the $100 minimum allowable under the restitution statute. Reduction of the restitution fine to the $100 minimum allowed by Government Code section 13967 satisfied the statute, but imposition of such a low fine would not result in prejudice. (*People* v. *Walker*, *supra*, at p. 1023.)

Here, the remedy that the People assert should be afforded petitioner for the trial court's erroneous statement regarding the period of parole is a reduction of petitioner's parole term to a period not to exceed five years. The problem with this suggested remedy is that it violates section 3000.1, subdivision (a). That statute expressly states that for a second degree murder conviction "with a maximum term of life imprisonment, the period of parole, if parole is granted, shall be the remainder of the inmate's life." Unlike the situation in *People* v. *Walker*, *supra*, 54 Cal.3d 1013, in which the remedy fashioned—reduction of the restitution fine rather than withdrawal of the plea of guilty—was within the statutory framework, here the People's suggested remedy of reducing the number of years that petitioner would serve on parole is not authorized by the parole statute at issue. The superior court recognized that when, at the hearing on the order to show cause in this writ proceeding, it rejected the People's suggested remedy as "creative sentencing" that would work "a subversion of the appropriate penal statute." I agree with the superior court that in this case allowing petitioner to withdraw his guilty plea is the only available remedy.

I would reverse the judgment of the Court of Appeal with directions to reinstate the relief granted by the superior court.