Filed 9/15/14  Modified and Certified for Pub. 10/14/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B250502 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA390420) |
| v. | |
| VAUGHN ARCHER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Carol H. Rehm, Jr., Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung Mar and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Vaughn Archer appeals from the trial court's order denying his motion to withdraw his no contest plea. Archer contends that the trial court overstated the maximum sentence he faced if convicted on all nine of the charges against him when the court advised him that he faced a maximum sentence of 34 years, 4 months to life. Archer asserts that the trial court should have taken into account that Penal Code section 654[1] would have applied to stay the sentences on some of the charges, and that, considering section 654, the maximum sentence Archer actually faced was 23 years to life. Archer contends that had he known his maximum sentence was 23 years to life rather than 34 years, 4 months to life, he would not have accepted the negotiated disposition of 27 years, 4 months. We conclude the trial court did not abuse its discretion in denying Archer's motion to withdraw his plea, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Crimes*

At 6:00 a.m. on October 27, 2011 Hagi Ahmad was sitting in his car with the windows up in front of a convenience store before his class at Los Angeles Trade Technical College. While he was waiting for the store to open so he could buy some food for breakfast before school, he saw Archer "punching" the car windows and saying something Ahmad could not hear. When Ahmad opened the car door and asked him what he wanted, Archer pulled on the door and said, "Okay, I own you now. Give me my car keys." Ahmad tried to close the door and said, "This is not your car. This is my car." Archer overpowered Ahmad, took the key out of his hand, punched him, and threw him

---

[1]     All further section references are to the Penal Code.

on the street. Archer then took Ahmad over to the sidewalk and punched and kicked him in his head, chest, and leg.

Archer left, only to return and start hitting and kicking Ahmad again. Archer took Ahmad's watch and cell phone and tried unsuccessfully to take the rings off his fingers. Archer then dragged Ahmad by the hood of his sweatshirt about a block and left him in the middle of the intersection, where a car almost hit him. Archer went back to Ahmad's car and drove it away.

Approximately half an hour later, Jon Murga was withdrawing cash from an automated teller machine. As he drove to the loading dock of a produce distributor to pick up some produce for a grocery store he owned, he noticed a car following him. Murga parked near the loading dock and was putting down the seats in his car when Archer approached. Archer was very animated and was trying to engage Murga in conversation, but Murga ignored him. Archer then demanded Murga's car keys. He grabbed a crowbar that was on the backseat of Murga's car and started chasing Murga with the crowbar. Archer approached Murga swinging his fists, and Murga ran into the middle of the street and tripped on a pothole. Archer assaulted him and took the car keys.

Murga called for help and a dispatcher from the produce distributor, Kipp Skaden, came to his aid. Archer attacked Skaden and Murga with the crowbar and hit Skaden on the head and elbow. Archer then went back to Murga's car and drove away. Murga's wallet and passport were in the car, along with clothing and other personal items. Skaden's injuries required stitches. The police recovered Murga's car, passport, and credits cards, as well as Ahmad's cell phone, at a hotel in Van Nuys, California, where Archer had gone after committing the crimes.

The People, in the second amended information, charged Archer with nine counts: (1) second degree robbery (§ 211; Ahmad); (2) carjacking (§ 215, subd. (a); Ahmad); (3) second degree robbery (§ 211; Murga); (4) carjacking (§ 215, subd. (a); Murga); (5) assault with a deadly weapon (§ 245, subd. (a)(1); Ahmad); (6) assault with a deadly weapon (§ 245, subd. (a)(1); Murga); (7) assault with a deadly weapon (§ 245, subd. (a)(1); Skaden); (8) battery with serious bodily injury (§ 243, subd. (d); Ahmad);

3

and (9) kidnapping to commit robbery (§ 209, subd. (b)(1); Ahmad). The information alleged with respect to counts 3, 4, 6, and 7 that Archer had used a deadly and dangerous weapon (a tire iron against Murga and Skaden) pursuant to section 12022, subdivision (b)(2), and with respect to count 7 that Archer had personally inflicted great bodily injury (on Skaden) pursuant to section 12022.7, subdivision (a). The information further alleged with respect to counts 1, 2, 5, 8, and 9 that Archer had personally inflicted great bodily injury (on Ahmad) pursuant to section 12022.7, subdivision (a). The information also alleged that all counts other than count 5 were serious or violent felonies, and that Archer had suffered four prior convictions for which he had served prior prison terms (§ 667.5, subd. (b)).

### B. *The Plea Agreement*

On November 1, 2012 Archer appeared in court with his attorney. The People offered Archer 27 years and 4 months, and Archer responded with a counterproposal of 16 years. The trial court stated, "It's not 'Let's Make a Deal.' Their offer is 27 years, 4 months, which is what you're facing on everything other than the kidnapping. For kidnapping, you're facing life in prison. If you're convicted on everything, then the sentence you're facing is 34 years, 4 months to life." Archer stated, "That's a lot of time for a person that does not have no strikes or no prior violence." The trial court stated, "I agree. It's a lot of time. It's easy for us to say. We don't have to do the time. . . . But on the other hand, you have to face the fact that, if you're convicted, you're looking at 34 years, 4 months to life. Basically, you're going to die in prison. The People's offer would be to allow you to have a life after you do your time." The trial court added that at 85 percent, Archer would "have to do 23 years and . . . a fraction [of] years before you would be paroled. If you're convicted on everything, there's no guarantee you would ever be paroled." After a pause in the proceedings, the court stated, "I can't get to a number less than 27 [years], 4 [months] on an open plea."

After a recess, counsel for Archer told the court that Archer wanted to accept the People's offer. The court stated that it would postpone sentencing to allow Archer to

4

obtain his general equivalency diploma (G.E.D.) and participate in a merit program. The court then turned to the People's second amended information, which required several corrections. The most significant correction was that the parties had confirmed that Archer had no prior strikes, and therefore the People moved to dismiss the strike allegations that the People had alleged in a prior information. The court granted the motion to dismiss, stating, "now we're going to strike those [allegations] so that he doesn't have all of those pending, and the calculation I had . . . made as to his maximum time was on—assuming those are stricken." Counsel for Archer said his client would be admitting the four prior prison term allegations. The trial court then stated that Archer would receive a total sentence of 27 years, 4 months.[2]

The prosecutor asked Archer a series of questions about his understanding of the proposed disposition and gave him various advisements. Archer acknowledged that he understood the proposed disposition and had no questions, that he had spoken with his attorney and wanted to go forward with the proposed disposition, and that his no contest plea was the same as a guilty plea. Archer was advised and acknowledged that as a result of his plea he was "going to have lots of strikes" and the commission of another crime could result in "an immense sentence." Archer was further advised and stated he understood that when he was released from prison he would be on parole for a period of

---

[2]     The court calculated this sentence as follows: 12 years on count 4, carjacking (principal term, Murga) (high term of nine years plus three years for the personal use of a deadly weapon); two years on count 1, second degree robbery (Ahmad) (one-third the middle term of three years plus one year for infliction of great bodily injury); two years, eight months on count 2, carjacking (Ahmad) (one-third the middle term of five years plus one year for infliction of great bodily injury); one year, eight months on count 3, second degree robbery (Murga) (one-third the middle term of three years plus eight months for personal use of a deadly weapon); two years on count 5, assault with a deadly weapon (Ahmad) (one-third the middle term of three years plus one year for infliction of great bodily injury); one year on count 6, assault with a deadly weapon (Murga) (one-third the middle term of three years); two years on count 7, assault with a deadly weapon (Skaden) (one-third the middle term of three years plus one year for infliction of great bodily injury); and four years for four prior prison terms. Under the plea agreement, the court would dismiss counts 8 and 9.

5

three years, that he would have to pay restitution, and that he would be eligible for conduct credit of up to 15 percent while he was imprisoned. When asked if he had any questions, however, Archer made a reference to the amended information and stated that he did not "feel right with this" and he was "in the dark." Archer stated, "Now, I feel that, if I don't take this deal, then I'm going to get life. So I feel like I have no choice but to take this case." The trial court stated, "If you're convicted of all counts, you're facing 34 years, 4 months to life. That's correct." Archer stated he felt pressured into taking the deal and was expressing his concerns.

After a recess, counsel for Archer reported that Archer wanted to accept the offer and continue with his plea. Archer acknowledged that no one had used any force to make him enter his plea or made him any promises about what would happen to him or his case other than what had been discussed in court. Archer stated that he understood and gave up his rights to a speedy trial, to confront and cross-examine witnesses, against self-incrimination, to present a defense, and to use the subpoena power of the court at no expense to him.[3] Archer then entered his pleas of no contest and admitted the remaining allegations. The court found, "Having heard the defendant being advised and questioned concerning his rights and the consequences of his plea and being satisfied with the answers to those questions, and the defendant being represented by counsel and consulting with counsel as he deemed appropriate, I find that the defendant has knowingly, expressly, intelligently and understandingly waived and given up his rights and entered a plea that's, in fact, free and voluntary and made with an understanding of the nature of the plea and the consequences thereof. I accept his plea, and he's convicted upon his plea." The court, after a time waiver, set probation and sentencing for February 19, 2013. Archer stated that he wanted "to apologize for [his] attitude. It's a lot of time." The court stated, "No problem. Your apology's accepted." The court concluded, "Mr. Archer, I'll see you back in February. You keep working on those programs, and I hope things work out on them for you."

---

**3**      Counsel for Archer joined in the waivers and concurred in the plea.

C.   *The Motion To Withdraw the Plea*

On February 19, 2013 Archer appeared in court with his attorney. The trial court indicated it was prepared to impose the agreed-upon sentence of 27 years, 4 months. Counsel for Archer advised the court, however, that Archer wanted "to make a motion to withdraw his plea at this point" because "he has received information that there is new evidence." The court stated, "It sounds like buyer's remorse to be honest. I will put it over and give you an opportunity to make a presentation to the court."

On March 25, 2013 Archer made a motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806, 835-836 [95 S.Ct. 2525, 45 L.Ed.2d 562]. The court granted the motion and gave Archer time to prepare and file his motion to withdraw his plea.

On July 8, 2013 Archer filed his motion to withdraw and change his plea, based on "fraud, duress, denial of effective assistance of counsel, and mistake ignorance or inadvertence or another factor overreaching the exercise of clear and free judgment." Archer asserted that the trial court, the prosecutor, and defense counsel "used fraud [and] duress to illegally induce [an] involuntary plea of trickery and deception and illegal threats of 34 years to life." Archer stated in his declaration that under section 654 the court could not punish him for both assault and robbery, that his "maximum potential time was miscalculated" as "33 years to life," and that he agreed to 27 years and 4 months because of the threat that he "would never get out unless I took this time." Archer argued in his memorandum of points and authorities that his former attorney's "permitting him to enter a plea that resulted in years difference of imprisonment constitutes a [dereliction] of his duty to ensure defendant entered his plea with full awareness of the relevant circumstances and the likely consequences of his actions." Archer referenced the trial court's statement that he was "going to die in prison" and his statement at the hearing that he felt pressured into pleading guilty.

The People opposed the motion. The People argued that Archer "has not provided one specific instance" of "fraud, mistake, inadvertence, ignorance, and ineffective

7

assistance of counsel," and "has not pointed to any specific fact or piece of evidence that caused him to be misled or is an indication of fraud."

After Archer filed a peremptory challenge to the trial judge who had been hearing his case, a different judge heard Archer's motion to withdraw his plea. On July 31, 2013 the trial court denied Archer's motion. The court stated: "Nothing on this record demonstrates how, Mr. Archer, you would have prevailed had you gone to trial or what evidence existed that might exonerate you. Nothing on this record demonstrates that the People . . . offered you a better disposition or that they would have made such an offer. Nothing on this record demonstrates that you were entering your plea under duress or trickery or fraud. Everything was explained to you. You knew the maximum potential you faced if you want to trial. You said you understood everything and this was the disposition that you wanted. There's nothing on this record that indicates anything your attorney did prejudiced you. Nothing demonstrates that your attorney's conduct in this matter fell below the prevailing standard for the defense. And erroneous advice of counsel does not require a grant of a motion to withdraw. . . . So the bottom line here, Mr. Archer, is that you've demonstrated an insufficient basis to grant your motion, and your motion is denied."

On August 2, 1013 the trial court sentenced Archer pursuant to the plea agreement. The court granted Archer's request for a certificate of probable cause. Archer filed a notice of appeal that same day.

## DISCUSSION

Archer argues that the trial court "erred in denying his motion to withdraw his guilty plea" because the court misstated "the maximum term of imprisonment he faced if he went to trial" as 34 years, 4 months to life, when, if section 654 applied to some of the charges, the maximum term Archer faced was 23 years to life. Archer does not directly challenge the trial court's calculation of 34 years, 4 months to life as the maximum prison term, but he argues that the court should have applied section 654 in calculating his

potential maximum sentence and that had the court done so the court would have calculated, and advised Archer of, a lower maximum sentence. Archer contends that the trial court's failure to advise him of the effect section 654 could have on his maximum prison term violated his rights under section 1018,[4] and that the court's "substantial misstatement of the maximum term he faced if convicted as charged renders his plea subject to withdrawal." Archer asserts that he "sought to withdraw his guilty plea prior to the imposition of sentence, after learning of the true maximum term he faced if he were convicted after trial; a term significantly less onerous [than] stated by the court."

A prejudicial mistake in advising a defendant of his or her maximum possible sentence can constitute good cause for withdrawal of a plea. (See *In re Moser* (1993) 6 Cal.4th 342, 351-352; *People v. Johnson* (1995) 36 Cal.App.4th 1351, 1357.) We conclude, however, that in advising Archer of the maximum sentence he faced, the trial court did not have to determine what effect, if any, section 654 might have had on Archer's sentence had Archer proceeded to trial and been convicted on all charges and allegations.

A. *Burden of Proof and Standard of Review*

"A decision to deny a motion to withdraw a guilty plea "'rests in the sound discretion of the trial court'" and is final unless the defendant can show a clear abuse of that discretion. [Citation.] Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them. [Citation.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; accord, *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) "'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' [Citation.]" (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.) "[T]he fact that a hearing court's ruling on a section 1018 motion

---

[4] Section 1018 provides in pertinent part: "On application of the defendant at any time before judgment . . . the court may . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

is reviewed by us under the 'abuse of discretion' standard appropriately results in our paying considerable deference to the hearing court's factual findings: "'All questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge.'"" (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1460, fn. 4.)

B.       *Archer Has Not Met His Burden of Showing the Trial Court Abused Its Discretion in Denying Archer's Motion To Withdraw His Plea*

A trial court may allow a defendant to withdraw his or her guilty or no contest plea under section 1018 for good cause shown by clear and convincing evidence. (See *People v. Williams* (1998) 17 Cal.4th 148, 167.) "To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress." (*People v. Breslin*, *supra*, 205 Cal.App.4th at p. 1416; see *People v. Johnson* (2009) 47 Cal.4th 668, 679.) The defendant may not withdraw a plea because the defendant has changed his or her mind. (*People v. Nance*, *supra*, 1 Cal.App.4th at p. 1456; accord, *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)

Failing to explain to Archer the possible effects section 654 might have on his sentence was not a mistake, let alone a mistake that overcame Archer's exercise of free judgment, nor did it cause Archer to operate in ignorance when he entered his plea. Section 654 gives the trial court the authority "'to impose punishment for the offense that it determines, under the facts of the case, constituted the defendant's "primary objective"' keeping in mind the overall purpose of section 654. [Citation.]" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 268.) The court must stay execution of sentence on any convictions arising out of the same course of conduct and committed with the same objective. (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.)

Because "[t]he trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case" (*People v. Garcia* (2008) 167 Cal.App.4th 1550,

10

1564), the court cannot predict in advance how it will rule at sentencing. (See *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378 ["'[w]hether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination'"]; *People v. Tarris* (2009) 180 Cal.App.4th 612, 626 ["'[t]he question whether . . . section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination'"].) The trial court has no obligation or even ability to determine how it (or another trial court) will exercise its discretion at a future stage of the proceedings.

Moreover, the nature of the inquiry under section 654 is intensely factual and cannot be determined in advance, particularly where, as here, there has not been a trial. "'Section 654 precludes multiple punishment for a single act or indivisible course of conduct punishable under more than one criminal statute. Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the "intent and objective" of the actor.' [Citation.]" (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1229.) "'The defendant's intent and objective present factual questions for the trial court . . . .' [Citation.]" (*People v. Petronella* (2013) 218 Cal.App.4th 945, 964.) The trial court usually makes these determinations after hearing all of the facts and circumstances of the case at trial. (See *People v. Ross* (1988) 201 Cal.App.3d 1232, 1240 ["[t]he factual questions that are involved in determining the applicability of the statute—for example, whether the defendant held multiple criminal objectives—will in the vast majority of cases be resolved by the sentencing judge on the basis of the evidence received during trial"].) Even where, as here, the defendant enters a guilty plea and there is no trial, the trial court has the authority to conduct an evidentiary hearing to determine whether and how to apply section 654. "[W]here the evidence produced during trial sheds insufficient light on the [section] 654 issues or where, as here, a guilty plea is entered and there is no trial," the trial court may "hold an evidentiary hearing to establish an otherwise nonexistent factual basis for a necessary sentencing decision" under section 654. (*Ross*, *supra*, at pp. 1240-1241.) As Archer concedes, "the

11

applicability of . . . section 654 can be somewhat tricky and is dependent on the particular facts of the case."

The applicability and operation of section 654 in the absence of a trial or evidentiary hearing is particularly problematic in this case because of the multiple incidents of criminal activity by Archer and the several instances where Archer attacked, paused, and resumed his assault on his victims. With respect to Ahmad, the testimony at the preliminary hearing was that Archer (1) beat and punched Ahmad and took his car keys; (2) dragged Ahmad to the sidewalk and hit and kicked him there; (3) left and then returned sometime later to attack Ahmad again; (4) took Ahmad's watch and cell phone and attempted to steal his rings; and (5) dragged Ahmad into the middle of the street where a car almost ran him over. With respect to Murga, the testimony was that Archer (1) assaulted Murga with a crow bar; (2) took his car keys after he fell; (3) attacked Murga a second time and attacked Skaden; and (4) took Murga's car, stealing his wallet and other personal items with it. Section 654 very well may have applied to some of the charges against Archer. But to calculate the precise effect of section 654 on Archer's sentence at the time of the entry of his plea, without the benefit of a trial or evidentiary hearing, would be speculative. The trial court's failure to give an advisory opinion on the effect of section 654 on Archer's maximum sentence, before hearing all of the evidence either at trial or an evidentiary hearing, was not clear and convincing evidence of good cause under section 1018 for Archer to withdraw his plea. (See *People v. Nocelotl* (2012) 211 Cal.App.4th 1091, 1096 [""""burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty"""""].)

Even Archer's proposed anticipatory application of section 654 is premised on speculation. For example, Archer asserts that "the five counts involving Mr. Ahmad must be broken up into two separate incidents," and had Archer "been convicted following trial any sentence on counts [1], [5], and [8] would have to be stayed." Archer states that, "To the extent that the assault (count [5]) and/or the battery (count [8]) involved the altercation immediately following [Archer] throwing Mr. Ahmad out of the

12

car, these counts would be 'folded into' the carjacking alleged in count [2]." Perhaps, but perhaps not. First, it is possible that Archer's crimes against Ahmad would be "broken up" into more than "two separate incidents." The preliminary hearing testimony suggests that Archer (1) used force to gain possession of Ahmad's car, (2) took Ahmad to the sidewalk and assaulted and battered him again after achieving his goal of obtaining Ahmad's car, (3) left Ahmad only to return and assault and batter him some more. Thus, depending on what the evidence would have been at trial, Archer may have had more than two intents and objectives just with respect to Ahmad. Similarly, Archer asserts with respect to Murga that he "could not be separately sentenced for the carjacking and the assault, counts [4] and [6]," because "the evidence shows that the assault on Mr. Murga was no more than the force necessary to achieve the goal of carjacking." Again, not necessarily. According to the testimony at the preliminary hearing, Archer (1) used force to obtain Murga's car keys after Murga fell in the pothole, and then, rather than driving away, (2) commenced a second attack when Skaden attempted to assist Murga. The evidence at trial could show that in engaging in this conduct, Archer had two intents and objectives: stealing Murga's car and, once he had accomplished that by force, using additional force to inflict further injury on Murga (as Archer had with Ahmad).

Nor, contrary to Archer's assertion, did the trial court's failure to perform a section 654 analysis amount to a failure to advise him of the consequences of his plea. The trial court must advise the defendant "'of the direct consequences of the conviction such as the permissible range of punishment provided by statute . . . .' [Citation.]" (*People v. Barella* (1999) 20 Cal.4th 261, 266; see *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605.) In order to properly advise Archer of the *maximum* of the statutory range of punishment, the trial court had to disregard factors, like section 654, that might (or might not) reduce Archer's sentence.

*People v. Goodwillie* (2007) 147 Cal.App.4th 695, cited by Archer, is distinguishable. In that case the court and the prosecutor erroneously advised the defendant in plea discussions that the maximum conduct credit the defendant could earn in prison was 15 percent, when in fact the maximum conduct credit the defendant could

13

earn was 50 percent. (*Id.* at pp. 731-733.) The defendant rejected the prosecutor's offer of five years, four months, went to trial, and received an aggregate sentence of 10 years. (*Id.* at pp. 706, 732.) The court held that "the court and the prosecutor had a duty not to misinform [the defendant] as to his potential eligibility for 50 percent conduct credits," and that providing the defendant with this "inaccurate information . . . caused him to reject an offer that was more favorable to him than the sentence he received after trial, and deprived him of the opportunity to reach any other plea bargain." (*Id.* at p. 733.) Unlike the conduct credit limitation in *Goodwillie*, which would have automatically and inexorably capped the defendant's credit at a certain percentage regardless of the defendant's actual conduct in prison, the effect of section 654 on a sentence is speculative and uncertain. (Cf. *People v. Barella*, *supra*, 20 Cal.4th at p. 272 ["a defendant is not entitled to withdraw or set aside a guilty plea on the ground that the trial court, in accepting the plea, failed to advise the defendant of a limit on good-time or work-time credits available to the defendant"]; *People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1486 ["good time/work time credits and eligibility for parole . . . depend on unknowable events that occur after the defendant's incarceration" and "possible early release is speculative when the plea is taken and depends on facts that have not yet occurred"].)

Finally, even if the trial court had misadvised Archer, Archer would not be entitled to withdraw his plea of guilty because he did not make a sufficient showing of prejudice. A defendant, on direct appeal or habeas, "is entitled to relief based upon a trial court's misadvisement only if the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement." (*In re Moser*, *supra*, 6 Cal.4th at p. 352; see *People v. Breslin*, *supra*, 205 Cal.App.4th at p. 1416 ["[t]he defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake"].) Nowhere in his declaration in support of his motion to change his plea did Archer ever state that he would not have accepted the plea bargain had it not been for the claimed mistake. Archer stated in his declaration that he "pleaded guilty under duress and ignorance, . . . to 27 years 4 months . . . on threat from counsel that [he] would never

14

get out unless [he] took this time," but he did not state that, had the court advised him of the possible effects of section 654, he would not have accepted the deal and would have insisted on going to trial.  (See *In re J.V.* (2010) 181 Cal.App.4th 909, 914 [the "bare assertion of prejudice is not enough"]; cf. *People v. Zaidi*, *supra*, 147 Cal.App.4th at pp. 1488-1489 [defendant made more than "a naked assertion" of prejudice when he "supported his petition with a declaration that . . . [h]ad he known [registration as a sex offender] was a lifetime requirement, he would never have entered his plea and would have insisted on going to trial"].)

Archer cites *In re Carabes* (1983) 144 Cal.App.3d 927.  In that case the court found that the defendant had met his burden of showing prejudice because "[p]romptly after becoming aware of the parole consequence, [he] sought to withdraw his plea on the ground he was not aware of this consequence," from which "[t]he clear inference" was that "had he been aware of the parole consequence, he would not have pled guilty."  (*Id.* at p. 933.)  Although there is no evidence of when Archer learned about the section 654 issue, the record suggests that he did not move "promptly."  In addition, in this case the trial court accepted Archer's plea on November 1, 2012, and Archer did not indicate that he wanted to withdraw his plea until February 19, 2013, after the court had allowed him to continue in several educational programs.  Although we do not address the People's argument that Archer is estopped from challenging the validity of his plea because he "accepted a benefit of the bargain," the fact that, as the People argue, Archer "was allowed to avoid the imposition of his sentence" to participate in the education programs further distinguishes *Carabes*.

C.      *Archer Did Not Receive Ineffective Assistance of Counsel*

Archer argues that the attorney representing him at the time he entered his guilty plea "did not offer competent advice on the law with respect to the maximum sentence [Archer] faced if convicted at trial; in fact, the record shows that it was [Archer] himself who figured out that . . . section 654 would prohibit the court from running sentences on all counts consecutively if [Archer] went to trial and were convicted as charged."  Archer

15

complains that his attorney "was silent in the face of a misrepresentation of the maximum term by the trial court."

Archer is correct that he is entitled to effective assistance of counsel in determining whether to accept or reject a plea bargain. (See *Lafler v. Cooper* (2012) ___ U.S. ___, ___ [132 S.Ct. 1376, 1387, 182 L.Ed.2d 398]; *In re Alvernaz* (1992) 2 Cal.4th 924, 933; *In re Vargas* (2000) 83 Cal.App.4th 1125, 1133.) Archer, however, was not denied effective assistance of counsel. As noted, the trial court did not misrepresent the maximum term Archer faced if convicted, so counsel for Archer was not ineffective for being silent in court in the face of a statement that was not a misrepresentation. Moreover, there is no evidence that Archer received incorrect advice that caused him to accept the plea deal. (See *In re Alvernaz*, *supra*, at p. 934 ["in order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial"]; cf. *People v. Carter* (2003) 30 Cal.4th 1166, 1211 ["[i]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation"].) Archer stated only that his trial counsel failed to advise him about section 654 "prior to plea of guilty."

## DISPOSITION

The order is affirmed.

SEGAL, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B250502 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA390420) |
| v. | |
| VAUGHN ARCHER, | ORDER MODIFYING OPINION AND CERTIFYING FOR PUBLICATION, |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 15, 2014, be modified as follows:

1. On page 2, after the Introduction heading, add the following paragraph as the first paragraph:

> Before the trial court accepts a defendant's guilty or no contest plea, the court must advise the defendant of his or her maximum possible sentence if convicted of all charges. Failure to do so may be good cause to allow the defendant to withdraw the plea. In advising the defendant of the maximum possible sentence, does the court have to take into account the potential consequences of Penal Code section 654?[1] Our answer is no.

2. On page 2, the new footnote 1, as indicated in the insert noted in No. 1 above, is to read as follows:

> [1]All statutory references are to the Penal Code.

3.  On page 2, at the end of line 5, delete the words "Penal Code"; at line 6, after "section 654" delete the footnote 1 designation, so that the sentence now reads in part:

> Archer asserts that the trial court should have taken into account that section 654 would have applied . . . .

4.  On page 8, first full paragraph, the first sentence beginning "After Archer filed" is modified to read as follows:

> After Archer filed a peremptory challenge to the trial judge who had been hearing his case (Hon. William C. Ryan), a different judge (Hon. Carol H. Rehm, Jr.) heard Archer's motion to withdraw his plea.

There is no change in the judgment.

The opinion in the above-entitled matter filed on September 15, 2014 was not certified for publication in the Official Reports.  For good cause it now appears that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), and respondent's request for publication pursuant to California Rules of Court, rule 8.1120(a) is granted.

IT IS HEREBY ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion be published in the Official Reports.

_____          _____          _____
PERLUSS, P. J.                  ZELON, J.                        SEGAL, J.[*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2