Filed 12/16/24  P. v. Jones CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>RANDY KUTCHUWAH WINDWALKER JONES,<br><br>   Defendant and Appellant. | F085421<br><br>(Super. Ct. No. F19901573)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., and Gary R. Orozco, Judges.*

Alison Minet Adams for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Judge Hamilton presided on September 8, 2022; Judge Orozco presided over all other hearings pertinent to this appeal.

Appellant Randy Kutchuwah Windwalker Jones appeals after being sentenced, following a plea agreement, to a term of 50 years to life on one count of murder (Pen. Code,[1] § 187, subd. (a); count 1), with an enhancement for discharging a firearm and proximately causing death (§ 12022.53, subd. (d)), and two counts of assault with a firearm (§ 245, subd. (a)(2); counts 2, 4).[2] Appellant contends that he was denied his right to counsel on two separate occasions, both involving the trial court denying a request by newly retained counsel to continue the proceedings. Relatedly, appellant appears to argue he was improperly denied the right to withdraw his no contest plea. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The focus of this case is upon the procedural decisions made by the trial judge and not the underlying facts of the offense. As such, we only note for context that appellant was accused of hiring a taxi driver to take him to a meeting with two individuals at a motel. At that meeting, appellant produced a weapon and fired upon the two individuals he met with, killing one. Appellant then had the taxi driver drive him from the scene of the shooting.

Appellant was initially charged in March 2019 and pleaded not guilty. Appellant had retained counsel at the time. In April 2019, appellant substituted counsel for the first time and the matter was continued. In May 2020, appellant again substituted counsel and again obtained a continuance. At this point, appellant's counsel was Richard Beshwate. Beshwate and his cocounsel, Antonio Alvarez, served as appellant's counsel from this point forward, including at appellant's November 2020 preliminary hearing.

Following the preliminary hearing, the People filed an information alleging appellant committed murder (§ 187, subd. (a); count 1) with a firearm enhancement

---

[1]      Undesignated statutory references are to the Penal Code.

[2]      Counts 2 and 4 were eventually dismissed during sentencing.

2.

(§ 12022.53, subd. (d)), attempted murder (§§ 664, 187, subd. (a); count 2) with a firearm enhancement (§ 12022.53, subd. (b)), kidnapping (§ 207, subd. (a); count 3) with a firearm enhancement (§ 12022.53, subd. (b)), assault with a firearm (§ 245, subd. (a)(2); count 4), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5). After several initial continuances, the court set a tentative trial date in November 2021. From that point, at either the court or the defense's request, the date was continued to January 2022, two different dates in February 2022, May 2022, August 2022, and finally to September 8, 2022. In requesting the continuance to September 8, 2022, appellant's counsel argued the continuance was necessary so that their expert on issues relating to intoxication and mitigation could complete his discussions with appellant. At this continuance request, the People raised an objection that its witnesses were prepared to proceed and that at least one was fragile and finding the process very stressful.

*The Pretrial Continuation Request*

On September 6, 2022, appellant again requested a continuance. The request was made by a newly retained attorney, Curtis Sok. Sok requested the continuance because appellant had recently retained him and Sok needed time to investigate and prepare any feasible defenses. Sok sought a continuance of at least two months, requesting that no new trial date be set. Although not separately filed, Sok attached a substitution of attorney form that had been signed by all relevant parties to his motion.

The People opposed the request, noting that their witnesses had previously been ready for trial and that Beshwate and Alvarez had previously stated they would be ready for trial on September 8. In addition, the People submitted transcripts of appellant's phone calls from jail, in which he disclosed he was considering firing Beshwate and Alvarez in order to delay the trial on the hope he might get bail for a short period of time. As an example, appellant stated during one call that "the severe thing to do would be to get rid of [Beshwate] and Alvarez so this court can get pushed up somewhere and and [*sic*] to push for a bail motion in the felony court room." In another call, appellant

3.

discussed his desire to "get back out on bail" while plea negotiations proceeded before stating, "I can do an extreme thing and I would be fire both … Beshwate and … Alvarez. I could do that and I could hire a new counsel and by doing that I can push this out a year or two more years."

On September 8, 2022, the trial court heard Sok's motion for a continuance. Sok conceded he was not ready to proceed to trial but argued he wanted to evaluate appellant for a defense based on his mental state and was not seeking to obtain a substantial delay in the proceedings. The trial court denied the motion based on section 1050. The court rejected the request for further evaluation, believing such an evaluation had been completed and noting past extensions to complete it. The court further noted that Beshwate and Alvarez were still representing appellant and, relying on the jail call transcripts, concluded it "patently obvious that the 11th hour, last day, day of trial request to switch counsel is mere sophistry." Although not fully clear, it appears Sok did not continue to represent appellant after this ruling.

*The Plea Colloquy*

The next day, the parties appeared before the court having reached a plea agreement on the charges, with appellant represented by Beshwate and Alvarez. Appellant had signed a felony advisement, waiver of rights, and plea form and, consistent with such forms, initialed in several areas to affirmatively recognize that certain rights and issues had been discussed with him and were being specifically waived. The form indicated that appellant would plead no contest to counts 1, 2, and 4 and admit the relevant firearm enhancement. Appellant would receive a sentence of 50 years to life for count 1, and any sentence for counts 2 and 4 would run concurrently to count 1. The form and appellant's initials indicated appellant had a right to an attorney and "had enough time to discuss my case and all possible defenses with my attorney." Appellant further initialed boxes waiving his trial rights, noting his convictions were strikes under the "Three Strikes" law, and affirming he was voluntarily and freely entering into the

4.

plea, among other statements. The form was similarly signed by appellant's counsel, affirming that counsel had explained appellant's rights and answered all of appellant's questions with regard to the plea, as well as discussed the facts of the case, the consequences of the plea, and possible defenses with appellant.

The trial court then questioned appellant regarding his decision to plead no contest. Alvarez recited the terms of the plea agreement, and appellant affirmed his understanding of the plea and that he spoke with his attorneys about the plea. Appellant affirmed that he signed the plea form and understood what he read on that form. The court questioned appellant regarding his decision to waive his rights and plead no contest, conducting a standard but thorough plea colloquy. Included in this colloquy were confirmations that the maximum sentence under the plea agreement was 50 years to life, any other term would run concurrently, appellant would have three strikes as a result of the agreement, appellant would waive his appellate rights, there had been no other promises made to appellant, and appellant was not on any medication and was of sound mind at the time.

The court then amended count 2 of the information to charge a violation of section 245, subdivision (a)(2) to comply with the plea agreement. Appellant pleaded no contest to counts 1, 2, and 4 and admitted the section 12022.53, subdivision (d) firearm enhancement. The court concluded that appellant "knowingly, voluntarily, and intelligently" waived his rights, there was a factual basis for the plea, and appellant entered into the plea "in a knowing and voluntary way," with "an appreciation for the consequences of his plea," and an understanding of "what the plea agreement is." The court noted that appellant's waiver of appellate rights would be "memorialized at the time of sentencing." The court then concluded by stating that appellant "had sufficient time to speak with his attorneys and question them with regard to this plea, and the Court finds he enter[ed] into the plea with his eyes wide open and an appreciation of the rights he's

5.

given up and the consequences he will endure" and accepting the plea. Finally, the court dismissed the remaining counts and scheduled sentencing for October 12, 2022.

*The Presentencing Continuation Request*

On October 12, 2022, Beshwate and Alvarez appeared with appellant for sentencing. In addition, Denise Yaniv appeared before the court, stating she was "specially appearing for Jeremy Karpel" who wished to substitute in as appellant's counsel.

The court noted that it had received an attempted filing on behalf of Karpel but had not accepted the filing because Karpel was not counsel for appellant. The court later noted that the filing was "not on a legal pleading" and no notice was attached. The court also noted that the motion was to continue appellant's sentencing.[3] The court then asked Beshwate and Alvarez to provide additional detail on the proposed substitution of counsel.

Beshwate explained that he had been contacted a couple days earlier about a potential substitution but had not been able to speak in depth with Karpel about the request. Beshwate did indicate, and appellant affirmed, that appellant wished to have Karpel substitute in as his attorney. Yaniv further explained that based on her understanding, Karpel had been retained approximately three days earlier but had been in Germany until the night previous, thus Karpel could not prepare for the substitution as one normally would and was not available for the hearing.

The People opposed any further continuance. The People first noted that the victim's mother was present and wished to speak to the court, along with a total of 13 family members who were present for the sentencing. The People argued appellant was "once again trying to delay the inevitable." In doing so, the People recounted the

---

[3]     The actual submission does not appear in the record on appeal, and it is unclear whether it was formally filed.

6.

pretrial motion for substitution and a continuance and referenced the findings made at that time, concluding the request was a mere delay tactic.

The court then noted it had "reviewed and read the two-paged double-sided notice of motion and motion … to continue sentencing" and would consider that filing. The court provided appellant an opportunity to speak. In response, appellant stated, "Two or three weeks ago I didn't know what I was signing. I thought the deal was I was gonna have my appellate rights. I didn't know what a stipulated 50 years to life meant, that someone does 50 years and then they have a chance to—to go to parole from there. I thought people got percentages and milestones, stuff like that. I really—I didn't—in my—I wasn't in the right state of mind. I wasn't aware of what I was signing at the time. I didn't know what I was signing really. I was just rushed into it, you know. I'd like to pull my plea back. I'd like to go to trial. That's what I feel right now."

Finally, the court heard one final time from Yaniv. Yaniv argued that "Karpel is just asking if there is a way for him to be substituted in and for sentencing to be continued. He understands that the family is here to make the victim impact statements, and he just told me to ask the Court if they could go ahead and do that, but just continue sentencing for 30 days or so."

The court next reviewed the transcript from the change of plea hearing before disclosing its ruling. The court began by recounting the history of the case, noting that the parties were "assigned here on the 8th and ready to proceed to trial" before the matter was trailed for plea discussions that resulted in the present plea agreement. That agreement "was always 50 to life as to Count 1. That never changed." The court further noted that it "would adopt those findings made by Judge Hamilton on the—it was the 7th or 8th of August that he made it." Next discussing the plea colloquy, the court determined that it "took great lengths in explaining to [appellant] what he was signing up for, even in here asking him, Do you have any questions? Have you had enough time to speak to your attorneys about this? You understand what that means? … You will

7.

receive 50 to life, something akin to that. Yes, I understand. The Court found him to be of sound mind, sound body."

The court further noted it was "not hearing anything your attorneys did wrong. I'm just hearing you say you didn't understand what you were doing that day, you misunderstood things." It then explained, "The Court is making the finding that is not the case. You clearly understood what you were signing up for on that day when this plea was taken on September 9, 2022. The request to substitute counsel I find untimely and without basis, so the Court's going to deny the substitution of Counsel as untimely and the prejudice that it would create for the People here today to move forward with the sentencing …."

*Sentencing and Appeal*

The court then proceeded to sentencing. Counsel for appellant, Beshwate, stated there was no legal cause why sentencing could not proceed. The court noted the plea was entered "as I mentioned moments ago, on the 9th of August, 2022,"[4] and both parties submitted based on the plea agreement, the letters submitted, and issues that were discussed in chambers. The court heard the victim impact statements, sentenced appellant to 50 years to life in line with the plea agreement, and dismissed counts 2 and 4 on the People's motion. In sentencing appellant, the court noted, "[Y]ou do have a right to appeal because the People and your attorney are not going through with that aspect with regard to waiver of appellate rights."

Appellant subsequently obtained a certificate of probable cause, and this appeal timely followed.

**DISCUSSION**

Appellant's briefing in this appeal focuses primarily on alleged errors relating to the denial of two continuance requests made in order to support his desire to change

---

[4]     Although the court referenced the plea agreement discussions as occurring in August 2022, they occurred in September 2022.

8.

counsel.  However, in a somewhat unfocused way, it also touches upon concerns that appellant's request to withdraw his plea was improperly rejected.  This court begins with the denial of the specific motions to continue made by appellant and then reaches the remaining claims suggested within appellant's briefing.  Ultimately, this court finds no error in the trial court's actions given the record supporting the trial court's findings that appellant's requests to substitute counsel were part of a plan to purposefully delay the pending proceedings and the evidence showing appellant's plea agreement was properly entered.

### *The Continuation and Substitution Requests Were Properly Denied*

The core arguments raised in appellant's briefing center around an alleged denial of appellant's right to counsel caused by the trial court's refusal to grant a continuance motion tied to a desire to substitute counsel in two instances.  The first instance arose just before trial.  The second occurred just before sentencing.  Although generally argued in a conjoined manner, this court finds both requests sufficiently distinct to warrant independent review and thus proceeds by first setting forth the general law governing review and then considering each request independently.

*Applicable Law and Standards of Review*

" 'The right to retained counsel of choice is—subject to certain limitations— guaranteed under the Sixth Amendment to the federal Constitution.  [Citations.]  In California, this right "reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain." ' " (*People v. O'Malley* (2016) 62 Cal.4th 944, 1004 (*O'Malley*).)  "Consistent with the Sixth Amendment right to counsel, a defendant may discharge *retained* counsel 'with or without cause.' " (*Ibid.*)

" 'The right to discharge a retained attorney is, however, not absolute.  [Citation.] The trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result

9.

in 'disruption of the orderly processes of justice' [citations]." ' " (*O'Malley, supra,* 62 Cal.4th at p. 1004.) Accordingly, a "court may exercise discretion to ensure orderly and expeditious judicial administration if the defendant is 'unjustifiably dilatory or … arbitrarily desires to substitute counsel at the time of trial.' " (*People v. Lara* (2001) 86 Cal.App.4th 139, 153 (*Lara*).) Although there is no requirement that a defendant " 'demonstrate inadequate representation or an irreconcilable conflict' " to discharge a retained attorney, the trial court can " 'consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly process of justice.' " (*O'Malley*, at p. 1004.)

We review the trial court's denial of a request for new counsel for an abuse of discretion. (See *People v. Ortiz* (1990) 51 Cal.3d 975, 984 ["The trial court, however, must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' "].) However, any error is inherently structural, requiring automatic reversal. (*Lara, supra*, 86 Cal.App.4th at p. 154.)

Continuances are governed by section 1050. "Continuances shall be granted only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (§ 1050, subd. (e).) "A trial court's exercise of its broad discretion when ruling on a continuance motion is accorded substantial deference on appeal." (*People v. Brown* (2023) 14 Cal.5th 530, 538.)

*The Pretrial Continuance Request*

Appellant contends the trial court abused its discretion when it denied his request for a continuance on the eve of trial so that new counsel could be substituted in and prepare a defense. We do not agree.

The trial court in this case was presented with facts demonstrating that the motion was not timely—i.e., that granting the request for a continuance and substitution of counsel would disrupt the orderly process of justice. Appellant's trial had already been

10.

continued from at least January 2022 until September 2022. During that time, appellant had been represented by the same counsel and had raised no concerns about their preparation or quality. Further, the People had prepared their case and their witnesses for trial, and appellant's counsel had been granted at least one continuance over the People's objection in order to finalize any potential intoxication defenses or mitigation arguments relying upon expert evaluations and testimony. At the time of the request, both defense counsel, the People, and all witnesses were prepared to proceed to trial.

In contrast, counsel seeking to substitute into the case and requesting the continuance had only been retained a few days prior to trial and was unprepared to proceed with the pending trial. Rather, counsel was requesting an open ended, but minimum two-month continuance in order to evaluate the case and potentially develop a vaguely defined mental state defense. In addition, the People presented evidence that the last-minute retention of new counsel was a calculated decision on the part of appellant to delay his trial and the proceedings generally and not the result of a conflict with his then existing attorneys or any other legitimate motive to exercise his right to counsel of his choice.

Under these conditions, we find no abuse of discretion in denying the requested continuance and effectively precluding substitution of counsel on the eve of trial. The case had been heavily delayed already, existing counsel provided no argument they were unprepared, and evidence affirmatively showed that appellant was seeking to game the system in some manner through the substitution and continuance. It is well settled that a defendant cannot "demand a continuance if he is unjustifiably dilatory in obtaining counsel [citation], or if he arbitrarily chooses to substitute counsel at the time of trial." (*People v. Byoune* (1966) 65 Cal.2d 345, 346.)

The record does not provide any indication that the substitution and continuance was needed because of any issue with present counsel's ability to try the case, nor any indication that the court was steadfastly seeking an expeditious resolution in the face of

11.

legitimate concerns raised by appellant. Accordingly, the cases generally relied upon by appellant do not undercut the conclusion that the court was acting within its discretion when it denied the requests. (See *People v. Crovedi* (1966) 65 Cal.2d 199, 208–209 [lead counsel hospitalized]; *People v. Williams* (2021) 61 Cal.App.5th 627, 651–657 [efforts to remove existing counsel and retain new counsel made more than one month before trial support finding substitution was genuine desire and not delay tactic].)

Further, although appellant argues in reply that the trial court erred because it did not specifically confirm the existing defense expert had completed his examination of appellant during the past continuances, we see no error upon review. Appellant's argument is based exclusively on assumptions made from the lack of questioning by the trial court. There is no indication in the record that the expert had not used the prior extension to complete his evaluation of appellant. Rather, the record shows that new counsel raised only a desire to develop his own defenses when seeking to substitute into the case. No claim was raised by existing counsel that the previously granted extension had been insufficient to complete the known and planned evaluation or that yet another continuation was needed to complete that task. To suggest the court could not act without resolving whether or not new counsel was seeking substitution to complete a previously identified examination, when neither new nor existing counsel raised the issue in open court when discussing the requested substitution and continuance, places far too great a burden on the discretion of the trial court to deny such requests when adequate evidence shows they are improper for other reasons. Here, the record clearly showed present counsel was retained late, was unprepared for trial, and was part of a plan by appellant to delay the proceedings. The trial court therefore did not abuse its discretion in denying the pretrial continuance.

*The Presentencing Continuance Request*

Although appellant generally relies upon the same base arguments for the denial of both continuation requests, the analysis requires consideration of the specific

12.

circumstances surrounding each decision. (See *Lara, supra*, 86 Cal.App.4th at p. 153 ["A court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution."].) There is a definitive situational difference between a request made immediately before trial and one made before sentencing. (See *People v. Trapps* (1984) 158 Cal.App.3d 265, 271 ["This was a sentencing, not a trial."].) Accordingly, we separately analyze the court's later decision to deny a request for continuance at sentencing when, again, a request to substitute counsel underlay the motion.

Although the risk that a continuance would disrupt the orderly process of justice was much lower at the time of the presentencing substitution and continuation request, we again find the trial court acted within its discretion when it denied the motion. The court was presented with a very similar factual situation to the continuation request made before trial. Although nearly a month had passed since appellant entered his plea and sentencing had been set, new counsel informed the court that they had been retained only a few days earlier, and existing counsel confirmed that it had only been a couple of days since they had learned of the request. Additional factors showed the rushed nature of the request, including that the actual attorney seeking to substitute in was unable to make the hearing, sent a subordinate in their place, and had attempted the filing purportedly requesting the continuance through a document that appeared unconforming to the court. At the same time, the People had again put in substantial effort to prepare for the hearing, coordinating with the victim's family and having a large number of people present and ready to proceed.

In light of this factual situation, the court asked appellant the purpose of his substitution request. In response, appellant raised a broad claim that he had not understood the nature of his plea agreement and wished to revoke that plea and go to trial. The court, reviewing the record and findings regarding the prior motion to substitute, recognized that appellant had clearly indicated an overall attempt to delay

13.

proceedings. The court then reviewed the likelihood that appellant was raising a meaningful concern regarding the plea colloquy, as opposed to merely seeking to delay for delay's sake, and determined appellant's stated bases were unsupported. Based on this, the court denied the request.

We conclude that the record before the trial court was sufficient to support its discretionary decision not to allow appellant to substitute counsel prior to sentencing. It is true that the nature of the proceedings created far less of a risk to the orderly process of justice than delay before a trial, but the remaining facts in the record were strong enough to support a conclusion that appellant was once again seeking to game the system. Despite extreme delay derailing his pretrial request for new counsel—and the apparent decision by Sok not to continue with any representation despite retention before trial— appellant again waited until the last moment to identify and retain another new counselor who again sought to obtain a continuance, without disclosing any specific basis to do so. While appellant raised the specter of withdrawing his plea agreement as the reason for seeking new counsel, the court could justifiably rely on appellant's past conduct and its own findings regarding the nature of the plea colloquy (discussed *ante*) to conclude that appellant was again seeking substitution merely to derail the orderly execution of justice.

### *Appellant's Remaining Claims Do Not Require Reversal*

In several short or tangential arguments or statements, appellant indicates that other flaws in the proceedings support vacating his sentence and remanding. These include claims that appellant's plea agreement was defective—either because it was too close in time to the first substitution request or because of a purported error in the colloquy—and that the court should have delayed any ruling on appellant's motion to withdraw his plea. The court notes that several of these arguments lack any citation to law or meaningful argument. For example, under the heading "Appellant's Plea Was Involuntary And Unconstitutional Because He Entered Into The Plea Agreement After The Court Denied His Newly Retained Counsel A Continuance To Prepare" (hyphens and

14.

underlining omitted), appellant's full argument is: "Based on the sequence of events in which critical phases of the proceedings were manifestly conducted after [appellant] was denied new counsel of his choice, the fairness of the acceptance of the no contest and the sentencing must be questioned." It is therefore unclear whether or not appellant raised these positions as support for his claim that counsel was improperly denied or as independent claims.

" ' "[A]n appealed judgment is presumed correct, and appellant bears the burden of overcoming the presumption of correctness." [Citation.] As a result, on appeal "the party asserting trial court error may not … rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]" [Citations.] When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; see *People v. Williams* (1997) 16 Cal.4th 153, 206 ["Points 'perfunctorily asserted without argument in support' are not properly raised."].) Appellant's failure to meaningfully raise claims outside of the positions discussed above regarding the alleged error in not allowing for counsel of appellant's choosing forfeits those claims.

To the extent this court can discern specific arguments regarding the propriety of appellant's potential attempt to withdraw or set aside his no contest plea, we see no error warranting reversal. As detailed above, the trial court conducted a substantial and in-depth inquiry into appellant's decision to change his plea shortly before trial. In the course of that discussion, appellant provided several indications that he knew and understood the terms of his plea agreement and was knowingly and willingly entering his no contest plea.

When appellant was asked why he wished to substitute counsel, he generally implied that he wished to withdraw his prior no contest plea and go to trial. Neither he nor his counsel, however, specifically requested such relief. Despite this, the court

15.

reviewed the transcript of the change of plea hearing and specifically considered whether the record presented some indication that appellant's actions were taken in furtherance of a legitimate aim, and not just as part of a continuing plan to delay the proceedings.

Section 1018[5] allows "a defendant to withdraw his or her guilty or no contest plea … for good cause shown by clear and convincing evidence." (*People v. Archer* (2014) 230 Cal.App.4th 693, 702.) To establish good cause, the defendant must demonstrate they were operating under mistake, ignorance, or any other factor overcoming the exercise of their free judgment, and not merely that they had changed their mind. (*Id.* at p. 703.) Neither newly retained counsel, existing counsel, nor appellant, provided any basis by which appellant's potential desire to withdraw his plea agreement could be considered. In light of the clear indications in the record that appellant was using the substitution of counsel to unreasonably delay his proceedings, the court was well within its discretion—to the extent it considered appellant's statements a request to withdraw his plea—to deny that request for lack of good cause shown.

Similarly, although appellant generally implies he was misadvised regarding the retention of his appellate rights, the record does not support such a claim. At the initial plea colloquy, the parties agreed that a final determination on appellant's appellate rights would be resolved by sentencing. However, the discussion was concerning whether appellant would fully waive all appellate rights, not whether or to what extent he could appeal following a no contest plea generally. (See *People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 400 [explaining that a defendant may not only waive important constitutional rights by pleading guilty, but may expressly waive the statutory right to appeal as well].)

---

[5] Appellant's opening brief refers to section 1202, related to motions for a new trial, arguing that the "trial court's denial of appellant's motion for a continuance was also improper to the extent that the court found that there were no 'viable grounds for a motion for a new trial.' " Appellant's reply brief refers to the request as a motion to withdraw plea. This court understands the arguments to relate to withdrawing the plea and not for a new trial.

At the sentencing hearing, the court specifically informed appellant that his right to appeal had not been restricted by the plea agreement, as neither party went through with the waiver plans. That the court did not specifically tell appellant about the need to seek a certificate of probable cause to enforce those rights hardly rises to the level of a failure to advise regarding appellant's right to appeal. (Compare *People v. Brown* (1971) 18 Cal.App.3d 1052, 1055 [failure to advise where defendant's plea was specifically conditioned on a right to appeal an issue that was inconsistent with the plea and already subject to a different right of appeal that did not require the plea to invoke] with *People v. Waters* (1975) 52 Cal.App.3d 323, 329–330 [where plea was entered with no additional promise of appeal rights *Brown* was distinguishable].) Regardless, even if an error based on a failure to advise of the need for a certificate of probable cause were found, the fact that counsel obtained the relevant certificate demonstrates no prejudice occurred.

In conclusion, to the extent appellant has adequately raised any arguments aside from the denial of counsel claims, the arguments neither demonstrate error nor that such alleged error requires reversal.

### DISPOSITION

The judgment is affirmed.


                                                                    HILL, P. J.
WE CONCUR:


SMITH, J.


SNAUFFER, J.

17.