Filed 1/21/22  P. v. Martinez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>LUIS ANTONIO MARTINEZ,<br><br>      Defendant and Appellant. | A160336<br><br>(Contra Costa County<br>Super. Ct. No. 51912278) |

Luis Antonio Martinez viciously beat his former girlfriend, then violently raped her.  The prosecution charged Martinez with seven felonies; he pled guilty to three — including forcible rape — in exchange for a 10-year 4-month prison sentence and a waiver of his right to appeal.  Thereafter, the trial court denied Martinez's motion to replace counsel (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)) and sentenced him pursuant to the plea agreement.

On appeal, Martinez challenges the denial of his *Marsden* motion.  We affirm.[1]

---

[1] By separate order filed this date, we deny Martinez's petition for writ of habeas corpus (case No. A163572).

## BACKGROUND

We recount the facts based on the preliminary hearing transcript, which the parties stipulated provided the factual basis for Martinez's plea.

Martinez is Jane Doe's ex-boyfriend and the father of her youngest child. In April 2019, Martinez came to Doe's house late at night, while the children were asleep, and accused her of dating other men. Martinez searched the house and threatened to kill Doe. The commotion woke the children. Martinez took Doe's cell phone and barricaded the front door with furniture "so no one could leave." As Doe's 12-year-old daughter watched, Martinez put Doe in a headlock and held a metal "[s]amurai sword" close to Doe's face. He also grabbed Doe by the hair, dragged her around the house, and predicted " '[e]veryone might die tonight.' " Believing Martinez was going to kill her, Doe bid her children farewell and asked her daughter to get help.

During the ordeal, Doe tried to placate Martinez by sitting on his lap and giving him physical affection. In response, Martinez removed Doe's pants and underwear and inserted his penis into her vagina. Doe did not want to have sexual intercourse with Martinez; she acquiesced to "protect her life." Martinez repeatedly punched and slapped Doe in the face while he had sex with her. Early the next morning, police officers arrived at the house and took Martinez into custody.

A law enforcement officer interviewed Martinez in custody. After being advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, Martinez confirmed Doe's version of the incident, save that he described the sexual intercourse as consensual.

The prosecution charged Martinez with seven felonies: forcible rape (Pen. Code, § 261, subd. (a)(2), all further statutory references are to the Penal Code), kidnapping (§ 207, subd. (a)), assault with a deadly weapon, a sword (§ 245, subd. (a)(1)), infliction of corporal injury on a person with whom Martinez had a dating relationship (§ 273.5, subd. (a)), false imprisonment by violence (§§ 236, 237), child abuse (§ 273a, subd. (a)), and criminal threats (§ 422, subd. (a)). The prosecution further alleged Martinez personally used a deadly and dangerous weapon, a sword, during the commission of the false imprisonment and criminal threats (§ 12022, subd. (b)(1)), and that he personally used a dangerous or deadly weapon in the commission of the forcible rape (§§ 667.61, subds. (b), (e), 12022, 12022.3, 12022.5 & 12022.53). The section 667.61 enhancement authorized a prison sentence of 15 years to life.

In February 2020, Martinez pled guilty to forcible rape, infliction of corporal injury on a person with whom he had a dating relationship, and child abuse, in exchange for a sentence of 10 years 4 months in state prison and dismissal of the other charges and enhancements. Martinez initialed and signed a written plea form stating in relevant part: "I understand that I have the right to appeal this sentence, conviction and any rulings made by the Court in this case. I give up my right to appeal in exchange for accepting this negotiated disposition."

Martinez's counsel attested he discussed the facts of the case with Martinez, as well as the elements of the charges and the possible defenses. Counsel also discussed the consequences of the plea with Martinez. Counsel stipulated there was a factual basis for the plea. The trial court determined the plea was knowing, intelligent, and voluntary.

A week later, Martinez moved to replace his attorney. He complained defense counsel had not given him "a clear understanding of what was going on" and "wasn't looking out for [his] best interest." According to Martinez, "we had different understanding . . . in the beginning of the . . . case. And now . . . the outcome of it is completely different than what I was understanding in the beginning." When the court asked Martinez what he thought the "outcome was going to be," Martinez responded: "[t]hat we had a better chance than the ten year deal was going to be. [¶] . . . [¶] So in the beginning I had [an] understanding I had a better chance of winning the case and . . . getting off. But then when it came to this, . . . I wasn't a hundred percent with what happened towards the end of it."

When pressed to specify why he was dissatisfied with defense counsel's representation, Martinez said counsel "persuaded" him to plead guilty. Martinez told counsel he "didn't want" the plea deal, but counsel pushed him to accept it, and warned: " '[i]t's the best it can get. It's not going to get any better.' " Defense counsel's comments made Martinez feel his only choice was to plead guilty. Defense counsel denied pressuring Martinez to accept a negotiated disposition. Counsel did, however, advise Martinez of the benefits of entering a plea given Martinez's "admissions" and in light of the fact that his potential prison sentence was "longer than the deal . . . being offered." In counsel's view, the 10-year 4-month plea was "a good deal" and Martinez "did the right thing in taking it."

When the trial court asked counsel whether this was a "15-year to life case," counsel responded: "25, yeah, correct." The court said, "Okay, 25." Then the court denied the motion. It reasoned that defense counsel had not done "anything wrong." The court explained to Martinez that a *Marsden* "motion is strictly whether or not to remove your attorney because of issues

4

that they are not doing what they should be doing, and issues in the relationship, and I'm not hearing that." In the court's view, Martinez had "buyer's remorse" after entering his plea. Defense counsel declared a conflict, and the court appointed substitute counsel.

In June 2020, the trial court sentenced Martinez to a 10-year 4-month prison term pursuant to the plea agreement. Martinez appealed and obtained a certificate of probable cause as to whether the court erroneously denied his *Marsden* motion, and whether substitute counsel failed to move to withdraw the plea "contrary to [Martinez's] request."

## DISCUSSION

The Attorney General urges us to dismiss the appeal based on the waiver provision in Martinez's plea agreement. We decline to do so. We consider — and reject — Martinez's challenge to the trial court's denial of the *Marsden* motion on the merits.

### I.

"Appellate waivers contained within plea agreements are generally enforceable" (*People v. Becerra* (2019) 32 Cal.App.5th 178, 186), but the "burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the matter to speculation, and doubtful cases will be resolved against a waiver. [Citation.] The right of appeal should not be considered waived or abandoned except where the record clearly establishes it." (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662 (*Vargas*).)

" '[A] waiver that is nonspecific, e.g., "I waive my appeal rights" or "I waive my right to appeal any ruling in this case," ' is considered a general waiver. [Citation.] 'A broad or general waiver of appeal rights ordinarily includes error occurring *before* but not after the waiver because the defendant could not *knowingly and intelligently* waive the right to appeal any

5

unforeseen or unknown future error.'" (*People v. Becerra*, *supra*, 32 Cal.App.5th at p. 186, first italics added; *People v. Patton* (2019) 41 Cal.App.5th 934, 942–943 [waiver of right to appeal did not encompass issues "that were yet to be determined in future proceedings"]; *Vargas*, *supra*, 13 Cal.App.4th at pp. 1661–1662 [defendant waived "right to appeal errors occurring up to the time of the waiver" but not "subsequent sentencing error"].)

Applying these principles, we conclude Martinez's challenge to the *Marsden* ruling does not come within the scope of the appellate waiver. As in the above cases, Martinez's waiver was general: he agreed to give up his "right to appeal in exchange for accepting [the] negotiated disposition." To the extent the waiver can be construed to apply to the trial court's rulings, the waiver encompassed rulings made "up to the time of the waiver." (*Vargas*, *supra*, 13 Cal.App.4th at p. 1661; *People v. Becerra*, *supra*, 32 Cal.App.5th at p. 186.) But at the time of the waiver, Martinez had not made a *Marsden* motion. A "waiver of appeal rights does not apply to ' "possible future error" [that] is outside the defendant's contemplation and knowledge at the time the waiver is made.'" (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815; *People v. Espinoza* (2018) 22 Cal.App.5th 794, 801.)

The Attorney General appears to accept the premise that the waiver is "general" in that it does not explicitly reference the *Marsden* motion or ruling thereon. But the Attorney General contends the purported *Marsden* error falls within the scope of the waiver because Martinez knew he felt pressured to plead guilty and, as a result, the *Marsden* issue was neither unforeseen nor unknown when he executed the waiver. This argument has some logical appeal, but no support in the appellate record. There is no evidence Martinez contemplated the *Marsden* issue at the time of the waiver. Indeed, the record

6

suggests otherwise.  As the trial court recognized when it ruled on the *Marsden* motion, Martinez was experiencing "buyer's remorse," which, by definition, is "[p]ostplea apprehension." (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.)

   *People v. Panizzon* (1996) 13 Cal.4th 68 is not to the contrary.  In that case, the defendant's plea agreement specified the sentence to be imposed, and the waiver of appellate rights "specifically extended to any right to appeal such sentence." (*Id.* at pp. 85–86, 87 & fn. 12.)  On appeal, the defendant asserted the sentence was disproportionate to his level of culpability, an argument the California Supreme Court held was within the scope of the appellate waiver. (*Id.* at p. 86.)  As *Panizzon* observed, "the sentence imposed by the court was neither unforeseen nor unknown at the time defendant executed" the plea and waiver. (*Ibid.*)  Unlike *Panizzon*, the waiver here did not specifically extend to the *Marsden* issue, which had not been raised or ruled on when *Martinez* entered his plea.  Because the *Marsden* issue "was unresolved at the time [Martinez] entered his guilty plea, it fell 'outside of [his] contemplation and knowledge when the waiver was made.'" (*People v. Mumm*, *supra*, 98 Cal.App.4th at p. 815.)

   As we have stated, the "right of appeal should not be considered waived or abandoned except where the record *clearly establishes* it." (*Vargas*, *supra*, 13 Cal.App.4th at p. 1662, italics added.)  Here, the record does not clearly establish Martinez waived his right to challenge the *Marsden* ruling.  Accordingly, we decline to dismiss the appeal.

## II.

   A *Marsden* motion refers to a defendant's request for "new counsel on the basis that his appointed counsel is providing inadequate representation." (*People v. Smith* (2003) 30 Cal.4th 581, 604.)  "'When a defendant seeks to

7

obtain a new court-appointed counsel on the basis of inadequate representation, the [trial] court must permit him . . . to explain the basis of [the] contention and to relate specific instances of inadequate performance. The court must appoint a new attorney if the record clearly shows the current attorney is not providing adequate representation or that the defendant and counsel have such an irreconcilable conflict that ineffective representation is likely to result. [Citations.] If the court holds an adequate hearing, its ruling is reviewed for abuse of discretion.'" (*People v. Rices* (2017) 4 Cal.5th 49, 69.)

A defendant "is entitled to effective assistance of counsel in determining whether to accept or reject a plea bargain." (*People v. Archer* (2014) 230 Cal.App.4th 693, 707.) To prevail on a claim of ineffective assistance, a defendant must show counsel's performance was deficient and that the deficient performance caused prejudice. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Prejudice in this context is "a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934.) A reasonable probability is one " ' "sufficient to undermine confidence in the outcome." ' " (*People v. Codinha* (2021) 71 Cal.App.5th 1047, 1064.)

A " 'defendant's self-serving statement . . . [regarding whether] with competent advice he . . . *would* [or would not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims.' " (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1421; *In re Alvernaz, supra*, 2 Cal.4th at p. 938.) " 'In determining whether a defendant, with effective assistance, would have accepted [or rejected] the

plea offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he . . . was amenable to negotiating a plea bargain.'" (*Breslin*, at p. 1421.)

Martinez's ineffective assistance of counsel claim is premised on trial counsel's purported misadvisement about the potential sentence on the forcible rape charge and corresponding enhancement, e.g., that counsel told Martinez the potential sentence was 25 years to life, when it was only 15 years to life. We note that counsel characterized the "case" — not just count one and its enhancement— as carrying a maximum sentence of 25 years to life, but assuming for the sake of argument counsel's performance was deficient, Martinez's claim fails because he cannot establish prejudice — that he "would not have pleaded guilty and would have insisted on proceeding to trial" but for counsel's alleged incompetence. (*In re Alvernaz, supra*, 2 Cal.4th at p. 934.)

At the *Marsden* hearing, Martinez complained he did not want to plead guilty because he believed he had a "chance of winning the case and . . . getting off." A reasonable inference from this comment is Martinez wanted to go to trial *regardless* of his potential prison sentence. On this record, there is no evidence that had Martinez been properly advised the prison sentence on the forcible rape charge and corresponding enhancement was 15 years to life, he "would not have pled guilty." (*People v. Codinha, supra*, 71 Cal.App.5th at pp. 1064, 1070; *In re J.V.* (2010) 181 Cal.App.4th 909, 914 ["bare assertion of prejudice is not enough" to demonstrate prejudice]; but see *People v. Johnson* (1995) 36 Cal.App.4th 1351, 1357–1358 [where the defendant believed he

"may have cut his sentence almost by half, from a potential 38 years to 20," defense counsel's misadvisement "was a substantial inducement" in the defendant's decision to plead no contest].)

Moreover, had Martinez declined the plea offer, preferring to go to trial, he likely would have faced all seven felony charges. And, had the prosecution chosen to seek maximum penalties, Martinez faced a life sentence. The plea bargain, on the other hand, assured Martinez a prison term of only 10 years and 4 months. Based upon our examination of the entire record, including the compelling prosecution evidence admitted at the preliminary hearing — and Martinez's admission that he punched and slapped Doe, threatened to kill her, and held a samurai sword to her neck in view of Doe's daughter — Martinez "fails to persuade us that it is reasonably probable [he] would have forgone the distinctly favorable outcome [he] obtained by pleading, and instead insisted on proceeding to trial and risked" a life sentence "but for counsel's alleged incompetence." (*People v. Breslin*, *supra*, 205 Cal.App.4th at p. 1421; *People v. Codinha*, *supra*, 71 Cal.App.5th at p. 1064.)

Nor was there any error in the trial court's denial of the *Marsden* motion. At the hearing, Martinez stated his reasons for wanting a new attorney, and defense counsel offered a response. The court was entitled to accept counsel's explanation. (*People v. Rices*, *supra*, 4 Cal.5th at p. 69.) That Martinez "may have been persuaded, or was reluctant, to accept the plea" does not demonstrate the plea was involuntary. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.) Moreover, a defense attorney's advice to a defendant to accept a plea bargain does not require a trial court to grant a *Marsden* motion. (See *People v. Abilez* (2007) 41 Cal.4th 472, 485–487.)

We decline to consider Martinez's suggestion that substitute counsel was at fault for failing to move to withdraw the plea. (*People v. Lombardo* (2020) 54 Cal.App.5th 553, 565, fn. 6 [declining to address "undeveloped" point "not stated under a separate heading or subheading"].)

## DISPOSITION

The judgment is affirmed.

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Fujisaki, J.

A160336